**Donald M. PETERSON,
Plaintiff-Appellant,**

v.

**BLUE CROSS/BLUE SHIELD OF
TEXAS et al.,
Defendants-Appellees.**

**Donald M. PETERSON,
Plaintiff-Appellant,**

v.

**Bill WEST et al., Defendants-Appellees.**

**No. 74–1374.**

United States Court of Appeals,
Fifth Circuit.

Feb. 14, 1975.
Rehearing Denied March 26, 1975.

Glynn A. Pugh, Dallas, Tex., for plaintiff-appellant.

Frank D. McCown, U. S. Atty., Kenneth J. Mighell, Asst. U. S. Atty., Dallas, Tex., for defendants-appellees.

Before DYER, SIMPSON and CLARK, Circuit Judges.

DYER, Circuit Judge:

In these two cases (consolidated on appeal) Dr. Peterson sought damages for malicious prosecution and for tortious conduct related to his alleged wrongful suspension under the Medicare program. The district court granted summary judgment for the defendants. We affirm.

The first suit was filed May 8, 1973, in a Texas state court against West, Vice President of Blue Cross of Texas, Stafford and Martin, Regional and Assistant Regional Counsel, respectively, of the Department of Health, Education and Welfare, and McSteen, Gruninger, Adams and Chancellor, all H.E.W. employees, whose duty it was to insure the integrity of the Medicare program. The claims made in this suit are admittedly identical (except for malicious prosecution) with the claims made in Peterson v. Weinberger, 5 Cir. 1975, 508 F.2d 45 this day decided. Likewise, the defendants are the same in both suits except for the addition here of the defendants West, Stafford, and Martin.

The second suit filed a week later, on May 17, 1973, in a Texas state court was against Blue Cross/Blue Shield of Texas, Group Medical and Surgical Services, and Group Hospital Service, Inc. It

raised the identical issues against the same corporate defendants as were included in *Weinberger, supra.* Admittedly this was a "protective" suit filed in the state court against the contingency that the federal court would determine in *Weinberger* that it was without jurisdiction over the corporate defendants.

Final judgment in *Weinberger* was entered on October 29, 1973. The district court found that Peterson had failed to prove a claim for either breach of contract or tort damages. It further found that the agents and employees of the Government had immunity from liability because they had acted within the scope of their employment in suspending Peterson and withholding payments due him under the Medicare program because of his possible fraud. The court also found that Peterson and his brother had submitted false claims to the Government, for which they were cast in damages.

A petition for removal under 28 U.S. C.A. § 1442(a)(1),[1] was timely filed in both state court cases in behalf of all the defendants as officers, employees, and agents of the United States. The district court granted summary judgment for the Government, finding that the issues presented were identical to those resolved on the merits in *Weinberger* and therefore should not be relitigated. We have this day affirmed *Weinberger* in all respects.

Peterson makes a two-pronged attack in these cases. He contends that both cases were improperly removed and should have been remanded, *ergo* the district court was without jurisdiction to pass upon the merits. He next argues that, even if the district court had jurisdiction, the judgment in *Weinberger* does not operate as *res judicata* because in one of these suits, a new cause of

action (malicious prosecution) was alleged, and in the other, three additional defendants were included.

Although we are strongly inclined to the view that the issues resolved in *Weinberger* were identical to the issues in these suits and are therefore *res judicata* as to the same defendants *and their privies*, we prefer to sustain the district court's judgment on the grounds that the removal of the suits was proper, the district court had jurisdiction of the parties and the subject matter, and all the defendants had governmental immunity from liability.

The defendants in these suits, except West, Stafford and Martin, were defendants in *Weinberger*. West's official capacity and his duties and responsibilities were detailed by him in that proceeding. Stafford and Martin, Regional and Assistant Regional Counsel, H.E.W., here named as co-conspirators, are alleged to have carried out the same illegal acts leading to Peterson's Medicare suspension as were attributed to the *Weinberger* defendants.

 It is indisputable that each of the defendants was either an "officer of the United States or an agency thereof, or persons acting under him" and that their actions were "under color of such office." Peterson urges however, that what he labels as tortious conduct took the defendants beyond the scope of their statutory authority. We took some pains in *Weinberger* to relate the factual background leading to the suspension of Peterson and concluded that "[t]here is not the slightest indication that any of the individual defendants acted outside of their line of duty or the scope of their employment in carrying out their official responsibilities." Peterson v. Weinberger, *supra,* at 51. We further concluded that since the corporate defendants

---

1. 28 U.S.C.A. § 1442 provides:

 (a) A civil action or criminal prosecution commenced in a State court against any of the following persons may be removed by them to the district court of the United States for the district and division embracing the place wherein it is pending:

 (1) Any officer of the United States or any agency thereof, or person acting under him, for any act under color of such office. . . .

were simply Medicare fiscal intermediaries, acting pursuant to a contract with the government, they were under the sovereign immunity umbrella.

 The purpose of the removal statute is to prevent federal officers or persons acting under their direction from being tried in state courts for acts done within the scope of their federal employment. In Willingham v. Morgan, 1969, 395 U.S. 402, 405, 89 S.Ct. 1813, 1815, 23 L.Ed.2d 396, the Supreme Court noted that "the removal statute is an incident of federal supremacy, and that one of its purposes was to provide a federal forum for cases when federal officials must' raise defenses arising from their official duties." On this premise, the Court further noted that "the test for removal should be broader, not narrower, than the test for official immunity." *Id.* In fashioning a broad application of the statute, the Court said:

> The federal officer removal statute is not "narrow" or "limited." Colorado v. Symes, 286 U.S. 510, 517 [52 S.Ct. 635, 637, 76 L.Ed. 1253] (1932). At the very least, it is broad enough to cover all cases where federal officers can raise a colorable defense arising out of their duty to enforce federal law. . . . This policy should not be frustrated by a narrow, grudging interpretation of § 1442(a)(1). *Id.* 395 U.S. at 406–407, 89 S.Ct. at 1816.

In a variety of circumstances removals under § 1442(a)(1) have been upheld; for example, Chafin v. Pratt, 5 Cir. 1966, 358 F.2d 349 (libel and slander suit against eight employees of the Public Health Service's Communicable Disease Center); Murphy v. Kodz, 9 Cir. 1965, 351 F.2d 163 (mid-air plane collision wrongful death suit against an officer of the United States Forest Service); Poss v. Lieberman, 2 Cir. 1962, 299 F.2d 358 (libel suit against a claims representative of H.E.W.); Texas v. National Bank of Commerce of San Antonio, 5 Cir. 1961, 290 F.2d 229 (*quo warranto* suit by Texas against National Bank for violation of Texas law).

 We conclude that the defendants in the instant actions were persons acting within the purview of § 1442(a)(1) and that the suits were properly removed. Removability having been established, the district court had jurisdiction to consider the controversy. What we said in *Weinberger* concerning immunity is fully applicable here. The entry of judgments for the defendants was proper.

Affirmed.