MEMORANDUM OPINION AND ORDER DENYING PLAINTIFFS’ MOTION TO REMAND AND GRANTING DEFENDANTS’ MOTION TO TRANSFER VENUE

COBB, District Judge.
Pending before the court are the following motions: (1) Plaintiffs’ Motion to Remand *821 and (2) Defendants’ Motion to Transfer Venue. The court, having considered the briefs and arguments of counsel, is of the opinion that the Plaintiffs’ Motion to Remand should be DENIED and the Defendants’ Motion to Transfer Venue should be GRANTED.
I. BACKGROUND
This toxic tort ease arises out of alleged chemical exposure at Tinker Air Force Base in Oklahoma City, Oklahoma. Approximately two hundred Tinker employees brought negligence and strict products liability claims against various corporate manufacturers. Plaintiffs allege multiple adverse health affects resulting from work performed on jet engines manufactured for the United States Air Force.
On November 13, 1992, plaintiffs filed a state court suit in Beaumont, Texas. The pleadings alleged “[pjlaintiffs would show that all Plaintiffs were exposed to hazardous chemicals, including, but not limited to cobalt, chromium, cadmium, acetylene, ethanol and heptane while working for the United States Air Force at Tinker Air Force Base in Oklahoma City, Oklahoma.” The plaintiffs further alleged “[e]ach plaintiff ... was exposed to the dust and fumes of the jet engine and jet engine parts” and that “plaintiffs were also exposed to numerous other hazardous chemicals while working at the air force base.” Plaintiffs’ first, second, and third amended petitions made similar allegations.
During discovery, defendants sent interrogatories to plaintiffs. This discovery sought evidence regarding the precise location of each exposure and the extent to which the plaintiffs performed their duties “on base.” The interrogatories also sought information regarding the types of chemicals to which plaintiffs were exposed. In addition, the defendants requested information about any adverse health effects which were caused by materials worked with at Tinker.
On July 16, 1993, the plaintiffs served responses to the interrogatories. With respect to questions inquiring where the various plaintiffs performed their duties, each response stated “all duties were performed on base.” (See, e.g., Plaintiff James E. Akin’s Answers to Interrogatories, Interrogatory No. 32). Additionally, the responses identified various chemicals to which each plaintiff was exposed. (See id., Interrogatory No. 5). Finally, the plaintiffs identified the health problems, if any, caused by substances worked with at Tinker. (See id., Interrogatory No. 12).
On August 13, 1993, Defendant General Electric Company (GE), joined by all other defendants, removed the ease to this court. The notice of removal asserted two bases for federal question jurisdiction: (1) the alleged exposures occurred on a federal enclave, and (2) GE was a person acting under a federal officer. Simultaneously, defendants moved to transfer venue to the Western District of Oklahoma on the grounds that it is a more convenient forum in which to litigate. In opposition, plaintiffs moved to remand, asserting (1) federal question jurisdiction does not exist and (2) the removal was untimely.

II. PLAINTIFFS’MOTION TO REMAND

The Court first considers plaintiffs’ motion to remand. Resolution of the motion requires the court to delve into issues of federal enclave jurisdiction, federal officer removal, and timeliness of removal. Addressing the issues in that order, the Court will first determine whether federal énclave jurisdiction is present.
A. Federal Enclave Jurisdiction
The Fifth Circuit described the nature of federal enclave jurisdiction in Mater v. Holley, 200 F.2d 123 (5th Cir.1952). Mater involved a personal injury sustained at Fort McPherson, Georgia. The plaintiff originally brought a negligence claim in federal district court, but her suit was dismissed by that court for lack of subject matter jurisdiction.
On appeal, the Fifth Circuit reversed. That court noted that as a Constitutional matter, the Congress had exclusive legislative power over “all Places purchased by the consent of the legislature of the State in which the same shall be, for the Erection of Forts, Magazines, Arsenals, dock-Yards, and other needful Buddings.” U.S. Const, art. I, § 8, cl. 17. The Court reasoned that any law *822 existing in territory over which the United States has exclusive sovereignty must derive its authority and force from the United States and is for that reason federal law. Mater, 200 F.2d at 124. The Court held that the district court had federal question jurisdiction over the case because it “would be incongruous to hold that although the United States has exclusive sovereignty in the area here involved, its courts are without power to adjudicate controversies arising there.... ” Id.
James Madison proposed the idea of granting Congress exclusive legislative powers over land purchased for the public benefit. See generally Capt. Richard T. Altieri, Federal Enclaves: The Impact of Exclusive Legislative Jurisdiction Upon Civil Litigation, 72 Mil.L.Rev. 55, 59 (1976). The Constitutional clause prevents state legislative interference with public lands. Similarly, Mater’s conclusion that there should be a federal forum in which to litigate controversies arising on such lands prevents state judicial interference with matters likely to involve substantial federal interests.
The present conflict presents a compelling argument for a holding that federal enclave jurisdiction exists over the tort claims. The United States Air Force is entrusted with this nation’s defense. The Air Force entreated plaintiffs to perform important maintenance tasks on jet engines. All plaintiffs performed all duties on Tinker Air Force Base. And the plaintiffs now claim that these very duties—repairing jet engines—resulted in personal injuries. As a result, this court holds that in a toxic exposure case such as this, when the plaintiffs’ claims arise out of exposure to chemicals on base in furtherance of their employment duties, enclave jurisdiction is properly invoked. The result of this holding is that the case presents a question arising under federal law, 28 U.S.C. § 1331, and is removable under 28 U.S.C. § 1441(a).[1]
B. Federal Officer Removal Jurisdiction
GE also argues that, even if federal enclave jurisdiction is not present, it is entitled to remove under 28 U.S.C. § 1442(a)(1). That section allows federal officers or persons acting under them to remove a case provided certain requirements are met. First, since GE is not a federal officer, it must be a “person” within the meaning of 28 U.S.C. § 1442(a)(1). Second, GE must assert a colorable claim to a federal defense. Third, GE must show that it is being sued for acts taken “under color of’ or at the direction of the federal officer.
1. Is GE a “person” as contemplated by 28 U.S.C. § 1442(a)(1)?
The first question is whether GE, as a corporation, is a “person” as that term is contemplated by 28 U.S.C. § 1442(a)(1). The Fifth Circuit spoke to this issue in Peterson v. Blue Cross/Blue Shield of Texas, 508 F.2d 55 (5th Cir.1975). Peterson involved a malicious prosecution case brought by a physician against corporate defendants for his alleged wrongful suspension under the Medicare program. Peterson, 508 F.2d at 57. The defendants removed the case under § 1442(a)(1) alleging federal officer removal jurisdiction. The court stated that “[i]t is indisputable that each of the defendants was either an ‘officer of the United States or an agency thereof, or person acting under him.’ ” Id. (emphasis added). Peterson, therefore, suggests that the term “person” encompasses more than just natural persons.[2] Many district courts have also concluded that “person” as used in § 1442(a)(1) includes corporations. See Pack v. AC and S, Inc., 838 F.Supp. 1099, 1102 (D.Md.1993); Fung v. Abex Corp., 816 F.Supp. 569, 572 (N.D.Cal.1992); Ryan v. *823 Dow Chemical Co., 781 F.Supp. 934, 946 (E.D.N.Y.1992).
Plaintiffs’ reliance on International Primate Protection League v. Administrators of Tulane Educ. Fund, 500 U.S. 72, 111 S.Ct. 1700, 114 L.Ed.2d 134 (1991) is misplaced. International Primate simply holds that a federal agency is not entitled to remove under § 1442(a)(1). That case does not apply for two reasons: First, GE is not a federal agency. Second, GE asserts it acted under the Secretary of the Air Force and not under the direction of any federal agency. In accordance with the great weight of authority, the Court therefore holds that GE is a person within the meaning of 28 U.S.C. § 1442(a)(1).
2. Can GE assert a colorable claim to a federal defense?
To remove as a federal officer, GE must assert a colorable claim to a federal defense. Mesa v. California, 489 U.S. 121, 109 S.Ct. 959, 103 L.Ed.2d 99 (1989). The purpose for this requirement is to ensure that the federal district court is passing on a question of federal law. In other words, assertion of the federal defense provides federal question jurisdiction which makes the case suitably removable. Therefore, the defendant removing under the federal officer statute is not bound by the well-pleaded complaint rule which ordinarily governs whether the case presents a federal question. Mesa, 489 U.S. at 136-37, 109 S.Ct. at 968-69.
GE argues it has a colorable claim to the government contractor defense set forth in Boyle v. United Technologies Corp., 487 U.S. 500, 108 S.Ct. 2510, 101 L.Ed.2d 442 (1988). In Boyle, the Supreme Court held that liability for design defects in military equipment cannot by imposed under state law if:
1. The United States approved reasonably precise specifications;
2. The equipment conformed to those specifications; and
3. The supplier warned the United States about the dangers in the use of the equipment.
Boyle, 487 U.S. at 512, 108 S.Ct. at 2518.
In opposition to the motion to remand, GE submits the Affidavit of Dempsey L. Hodges, manager of GE’s Midwest City Office. Hodges states that GE manufactured the jet engines repaired at Tinker under contract with the Secretary of the Air Force or his delegee. According to Hodges, GE manufactured the engines pursuant to specifications set by the Air Force.
Although GE might or might not ultimately prevail on its government contractor defense, that issue is beside the point. All that is required under § 1442(a)(1), as interpreted by Mesa, is that GE assert a colorable claim to the defense. Any determination as to the merits is collateral to the jurisdictional question here presented. The court, therefore, holds that GE has set up a colorable claim to the government contractor defense set forth by Boyle.
3.Is GE being sued for actions taken “under” or at the direction of a federal officer?
Finally, GE must establish a nexus between the acts it performed at the direction of the Secretary of the Air Force and the present claims for relief. Many courts have concluded that removal is proper when the lawsuit arises out of actions taken by a government contractor at the direction of a federal officer. See, e.g., Pack v. AC and S Inc., 838 F.Supp. 1099, 1103 (D.Md.1993); Fung v. Abex Corp., 816 F.Supp. 569 (N.D.Cal.1992); Gulati v. Zuckerman, 723 F.Supp. 353 (E.D.Pa.1989). For example, in Pack, the court considered whether Westinghouse, a government contractor, acted sufficiently at the direction of the Navy when manufacturing turbine generators. The court concluded that Westinghouse satisfied the “acting under” requirement of § 1442(a)(1). Pack, 838 F.Supp. at 1103.
The same rationale applies here. The plaintiffs’ discovery responses indicated that certain chemicals had caused adverse health effects. The chemicals were emitted during the repair of GE’s jet engines. The repair involved grinding engine parts manufactured by GE. Plainly, when a government contractor builds a product pursuant to Air Force specifications and is later sued because com *824 pliance with those specifications allegedly causes personal injuries, the nexus requirement is satisfied. GE, therefore, acted under a federal officer and has satisfied each of the requirements necessary to assert federal officer removal jurisdiction under 28 U.S.C. § 1442(a)(1).
C. Timeliness of Removal Under 28 U.S.C. § 1446(b)
The final question is whether the defendants timely removed this case under 28 U.S.C. § 1446(b). That section requires that the notice of removal be filed within thirty days after the receipt by the defendants, through service or otherwise, of a copy of the initial pleading setting forth the claim for relief upon which such action is based. 28 U.S.C. § 1446(b). However, an exception applies if the case stated by the initial pleading is not removable—the notice of removal may be filed within thirty days after receipt by the defendant, through service or otherwise, of a copy of an amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable. 28 U.S.C. § 1446(b). This exception to the general rule serves the laudable purpose of preventing the defendant from having to speculate whether a case is removable. It also functions as a deterrent to the plaintiff seeking to disguise the trae federal character of a claim.[3]
The Fifth Circuit applied this exception in Burks v. Amerada Hess Corp., 8 F.3d 301 (5th Cir.1993). Burks involved a case which the defendants removed on the grounds that ERISA completely preempted certain of the plaintiffs state law claims. The plaintiffs original pleadings alleged that wrongful termination caused the plaintiff to lose “benefits.” An amended pleading alleged the denial of benefits caused the plaintiff to suffer emotional distress. The defendants removed within thirty days after they received the amended pleading. In opposition to the removal, the plaintiff argued that his initial pleading triggered the thirty day clock and the removal, outside this period, was untimely.
The Fifth Circuit reasoned that the case stated by the initial pleading was not removable because a claim that wrongful termination resulted in a loss of benefits was not completely preempted by ERISA. The rule derived from the ease is that the thirty day period announced in § 1446(b) does not begin to run from an original pleading that does not specifically state a removable claim. Rather, the defendant has thirty days from the date he is on notice via receipt of a subsequent document indicating that the case is or has become removable.
The issue in the present case is more complicated than that in Burks because the defendants rely in part on enclave jurisdiction to sustain removal. Unlike other federal question cases, whether the present pleadings set forth a removable case is not determined by reference to ordinary causes of action and elements thereof. The typical case simply involves an examination of the pleadings to determine whether the rights asserted are federal rights set forth by the Constitution or Acts of Congress. Quite to the contrary, in enclave jurisdiction, the determinative fact is the precise location of the events giving rise to the claims for relief. It is only when the geography is mapped in a certain way that an otherwise state claim presents a federal question.
The defendants maintain they timely removed within thirty days after having received discovery responses revealing the exact location the chemical exposures in fact occurred. The plaintiffs strongly disagree, arguing that their original and amended pleadings placed the defendants on notice that the case was removable. According to plaintiffs, the time to remove was not tolled because the initial pleading stated a removable case. As noted at the outset, the original petition states in relevant parts: “[p]laintiffs would show that all Plaintiffs were exposed to hazardous chemicals, including, but not limited to cobalt, chromium, cadmium, acetylene, ethanol and heptane while working for the United States Air Force at Tinker Air Force Base in Oklahoma City, Oklahoma.” The plaintiffs further alleged “[e]ach plaintiff *825 ... was exposed to the dust and fumes of the jet engine and jet engine parts” and that “plaintiffs were also exposed to numerous other hazardous chemicals while working at the air force base.” Plaintiffs’ amended petitions contained similar allegations.
The Court holds that the state court pleadings are subject to two reasonable constructions and are, therefore, ambiguous. One construction, advanced by plaintiffs, is that the phrase “while working for the United States Air Force at Tinker Air Force Base” is a geographical modifier, referring to the location of the exposures. The other, advanced by defendants, is that the entire phrase is a durational modifier, describing the time period in which the exposures occurred. Regardless of which construction is more plausible, they are both reasonable. At the hearing on this matter, plaintiffs sought to dispel the defendants’ construction as unreasonable. However, the duration of the exposures is highly relevant to a defendant any time it reviews a toxic tort pleading because of its significance as to limitations periods. Further, the exposure period is relevant as to causation and the extent of injury. Finally, the length of exposure time is relevant insofar as it might absolve a defendant which made few or no product sales during a given period. In addition, as defendants point out, the pleadings do not exclude the possibility that some or all plaintiffs claimed injury due to exposures occurring off-base. Had some exposure occurred off-base, the defendants burden of establishing enclave jurisdiction would have been heavier.[4] The court, therefore, holds that the pleadings are ambiguous and the thirty days set forth in 28 U.S.C. § 1446(b) were tolled until the defendants received sufficient notice of removability via receipt of an “other paper.” See Pack v. AC and S, Inc., 838 F.Supp. 1099, 1101-02 (D.Md.1993) (holding that when initial pleading required defendant to guess as to removability, such pleading is insufficient to trigger thirty day limit). This holding advances both policies behind § 1446(b)—the defendants should not have to speculate as to removability, and plaintiffs should not be encouraged to draft pleadings with an eye toward insulating federal cases from removal.
The discovery responses received by the defendants without doubt provided notice that the case was removable. Defendants correctly point out that many courts have held that discovery responses can serve as “other papers” within the meaning of § 1446(b). See, e.g., Chapman v. Powermatic, Inc., 969 F.2d 160, 164 (5th Cir.1992), cert. denied, — U.S. -, 113 S.Ct. 1402, 122 L.Ed.2d 774 (1993); Johnson v. Dillard Department Stores, Inc., 836 F.Supp. 390, 391 (N.D.Tex.1993); Pack, 838 F.Supp. at 1101-02; Jong v. General Motors Corp., 359 F.Supp. 223, 226 (N.D.Cal.1973). The interrogatory answers informed the defendants that all plaintiffs performed all duties on Tinker Air Force base, and all claimed chemical exposure occurred while plaintiffs performed these duties. These papers precisely identified the location of the claimed exposures, which is the singularly relevant fact when determining the applicability of enclave jurisdiction. As such, the defendants were required to remove within thirty days from receipt of these responses. Defendants have done just that. The court concludes the removal was timely under § 1446(b).[5]
*826 For the above reasons, the plaintiffs’ motion to remand is DENIED.

III. DEFENDANTS’ MOTION TO TRANSFER VENUE

Defendants move to transfer venue to the Western District of Oklahoma. Given that the court has denied the motion to remand, transfer is appropriate under 28 U.S.C. § 1404. That section allows for discretionary transfer of cases for the convenience of the parties and witnesses and in the interest of justice. 28 U.S.C. § 1404(a).
It is a rare case that more aptly illustrates the policies driving § 1404. None of the plaintiffs resides in the Eastern (or any other) District of Texas. All of the alleged exposure occurred in Oklahoma City, Oklahoma. The defendants allegedly delivered their products to Tinker Air Force Base, located in Oklahoma City. The plaintiffs’ are Oklahoma residents. The only connections to Beaumont are lawyers representing the parties. Having weighed the above factors relevant under § 1404(a), the Court concludes that this case should be transferred to the Western District of Oklahoma.
The defendants’ motion to transfer venue to the Western District of Oklahoma is hereby GRANTED. The Clerk of the Court is hereby ORDERED to forward the file of this matter to the Clerk of the Court for the Western District of Oklahoma.
ORDERED, ADJUDGED, and DECREED that Plaintiffs Motion to Remand is DENIED. It is further ORDERED, ADJUDGED, and DECREED that Defendant’s Motion to Transfer Venue to the Western District of Oklahoma is GRANTED. It is further ORDERED that decision on any other pending motions is- deferred to the court in the Western Division of Oklahoma to which this case is assigned.

. Plaintiffs' argument that state courts have concurrent jurisdiction over transitory tort actions misses the point. Whether the state court's jurisdiction is concurrent is irrelevant to the issue whether a federal question is presented. Many federal questions may be heard concurrently in a federal system. The removal statutes permit a defendant to exercise the option of having a federal question decided by a United States court.

. See also 1 U.S.C. § 1 (instructing that when construing Congressional acts, unless context indicates otherwise, "person” includes corporations).

. The court in no way suggests the plaintiffs in the present case engaged in any such conduct.

. When exposures allegedly occur partially inside and partially outside the boundaries of an enclave an argument would surface that the state's interest increases proportionally, while the federal interest decreases.

. For the same reasons discussed above, federal officer removal was timely. The responses provided GE with notice that certain products manufactured by GE caused plaintiffs’ injuries. Thus, the discovery adequately notified GE of the required nexus between its manufacturing process and the claimed injuries. See Pack v. AC and S, Inc., 838 F.Supp. 1099, 1102 (D.Md.1993). The court notes, however, that the principal dispute at the hearing on this matter was whether GE timely asserted federal enclave jurisdiction.
Moreover, plaintiffs' waiver argument is unsound. Plaintiffs argue that because defendant Chemical Specialists and Development, Inc. filed a motion for summary judgment in state court, this resulted in a waiver of the right to remove. Waiver is the voluntary relinquishment of a known right. Because the court has concluded the case was not removable until plaintiffs served discovery responses, the defendants did not possess the removal option at the time Chemical Specialists filed its motion for summary judg *826 ment. Chemical Specialists' actions could not waive a right which had not yet accrued. Therefore, the court holds no waiver occurred.