Annie Bell RUFFIN,

v.

ARMCO STEEL CORP., et al.

Civ. A. No. H–96–4480.

United States District Court,
S.D. Texas,
Houston Division.

March 31, 1997.

Peter A. Kraus, Baron & Budd, Dallas, TX, for Annie Bell Ruffin.

David G. Matthiesen, Matthiesen & Associates, Houston, TX, for Armco Steel Corp.

## ORDER

GILMORE, District Judge.

Pending before the Court is Plaintiff's Motion to Remand (Instrument No. 5). After careful consideration of the submissions of the parties and applicable authority, the Court has determined that Plaintiff's Motion should be **GRANTED.**

### I.

This action was originally filed in state court by Plaintiff Annie Bell Ruffin, ("Estate"), individually and on behalf of the heirs of the estate of J. Frank Ruffin, Sr. ("Ruffin"), against Defendants Armco Steel Corporation ("Armco"), J.T. Thorpe Company, ("Thorpe"), and Guard–Line, Inc. ("Guard–Line"). Ruffin worked at Armco's steel mill ("Mill") in Houston, Texas, where it is alleged that he was exposed to asbestos and contracted an asbestos-related disease which ultimately caused his death. The Estate seeks recovery for Ruffin's death, claiming it was caused by various acts of gross neglect committed by Defendants. Specifically, the Estate contends that Armco failed to take the precautions necessary to maintain a safe workplace as evidenced by its failure to warn employees of the hazards of asbestos. Armco denies it acted negligently, claiming it was without knowledge that Frank Ruffin was exposed to asbestos while under its employment.

After being served with Ruffin's petition, Armco removed this case based on the federal officer removal statute, 28 U.S.C. § 1442(a)(1), which allows governmental officials and persons acting under their direction to litigate actions based on conduct committed under the color of federal authority in a federal forum. Armco claims that its Houston steel plant was constructed under the control of federal officials, which presumptively provides it with a sufficient basis for removal under § 1442(a)(1). The Estate filed a Motion to Remand (Instrument No. 5), arguing that removal was improper as Armco was unable to produce any evidence to demonstrate its entitlement to federal jurisdiction under 28 U.S.C. § 1442(a). In addition, the Estate argues that Armco removed this case without obtaining consent from the other parties. The Estate also requests sanctions for Armco's improper use of federal-removal procedure. In response, Armco claims that it proffered adequate proof to satisfy the statutory requirements of § 1442(a)(1) and that removal of this action was appropriate even without consent of the other parties.

### II.

On a motion to remand, the Court must determine whether the case was properly removed to federal court. *See Emrich v. Touche Ross & Co.,* 846 F.2d 1190, 1194–95 (9th Cir.1988). The party seeking to remove a case to federal court generally bears the burden of establishing federal jurisdiction. *Willy v. Coastal Corp.,* 855 F.2d 1160, 1164 (5th Cir.1988), *aff'd on other grounds,* 503 U.S. 131, 112 S.Ct. 1076, 117 L.Ed.2d 280 (1992). If the right to remove is doubtful, the case should be remanded. *Lance Int'l, Inc. v. Aetna Cas. & Sur. Co.,* 264 F.Supp. 349, 356 (S.D.N.Y.1967). Courts, however, should be cautious about dismissal, since a decision to remand is not appealable. *Roche v. American Red Cross,* 680 F.Supp. 449, 451 (D.Mass.1988).

Armco argues that removal is proper under 28 U.S.C. § 1442(a)(1), which states that an action may be removed by the "United States or any agency thereof or any officer (or any person acting under that officer) of the United States or of any agency thereof, sued in an official or individual capacity for any act under color of such office...." 28 U.S.C. § 1442(a)(1). The purpose of the statute is to protect government officials enforcing federal laws. *See Mesa v. California,* 489 U.S. 121, 126, 109 S.Ct. 959, 963, 103 L.Ed.2d 99 (1989). The motivation for the enactment of § 1442(a)(1) was concern that "state governments hostile to duly enacted federal laws would be able to frustrate the implementation of [federal] laws by bringing (or allowing to be brought) civil or criminal actions in state court against the federal officials responsible for their implementation." *Brown & Williamson Tobacco Corp. v. Wigand,* 913 F.Supp. 530, 533 (W.D.Ky. 1996). By conferring federal subject matter jurisdiction over properly removed actions,

Section 1442(a)(1) allows "those whose federal activity may be inhibited by state court actions to remove to the presumably less biased forum of federal court." *Ryan v. Dow Chem. Co.,* 781 F.Supp. 934, 939 (E.D.N.Y. 1992).

■ To successfully remove a case under 28 U.S.C. § 1442(a)(1), Armco must (1) raise a colorable federal defense to the claims asserted against it; (2) show that it acted under the direction of a federal officer; and (3) demonstrate a causal nexus between the Estate's claims and the acts it performed under color of federal authority. *Mesa,* 489 U.S. at 124–25, 131–35, 109 S.Ct. at 962, 966–67; *see also Winters v. Diamond Shamrock Chem. Co.,* 901 F.Supp. 1195, 1197 (E.D.Tex. 1995); *Fung v. Abex Corp.,* 816 F.Supp. 569, 571–72 (N.D.Cal.1992). The removing party is not required to obtain the consent of any other defendant before removing a case under § 1442. *Ely Valley Mines, Inc. v. Hartford Accident & Indem. Co.,* 644 F.2d 1310, 1315 (9th Cir.1981).

■ Before determining whether jurisdiction may be invoked under the federal officer removal statute, the Court must first decide whether a defendant qualifies as a "person" as that term is applied in § 1442(a)(1). In *Peterson v. Blue Cross/Blue Shield of Texas,* the Fifth Circuit, by allowing corporate defendants to remove a suit under § 1442(a)(1), adopted, at least implicitly, a definition of the term "person" that includes, in addition to natural persons, purely legal persons, such as corporations. 508 F.2d 55, 57–58 (5th Cir.) *cert. denied,* 422 U.S. 1043, 95 S.Ct. 2657, 45 L.Ed.2d 694 (1975); *see also Winters,* 901 F.Supp. at 1198 (holding that corporate defendants were considered "persons" under § 1442(a)(1) based on decision in *Peterson* ); *Akin v. Big Three Indus., Inc.,* 851 F.Supp. 819, 822 (E.D.Tex.1994) (same). In approving removal, the court stated that "[i]t is indisputable that each of the defendants was either an 'officer of the United States or an agency thereof, or persons acting under him.'" *Peterson,* 508 F.2d at 57.

Taking into consideration the purpose of § 1442(a)(1), this Court believes an expansive reading of "person" is more consistent with the Act's underlying objectives. It is foreseeable that a corporate entity could be assigned or delegated responsibility to carry out directives of the federal government. In this instance, state court actions against such a corporation could possibly interfere with federal policy, undermining the effect of § 1442(a)(1). *See Ryan,* 781 F.Supp. at 946. The Court therefore concludes that Armco is entitled to status as a "person" thereby allowing it to seek removal under § 1442(a)(1).

■ Under the *Mesa* test, defendants are first required to assert a colorable federal defense to the plaintiff's claims. "The question is not whether a defendant's claimed defense is meritorious, but only whether a colorable claim to such a defense has been made." *Ryan,* 781 F.Supp. at 944. " 'The validity of the defence [sic] authorized to be made is a distinct subject. It involves wholly different inquiries. . . . It has no connection whatever with the question of jurisdiction.' " *Mesa,* 489 U.S. at 129, 109 S.Ct. at 964 (quoting *The Mayor v. Cooper,* 6 Wall. 247, 73 U.S. 247, 254, 18 L.Ed. 851 (1867)).

■ Armco claims that it is entitled to assert the federal common law government or military contract defense. Under this defense, a defendant who designs or manufactures products under the direction of the government can evade liability under state law for injuries resulting from the use of those products by demonstrating that (1) the United States approved reasonably precise specifications for the contracted-for equipment; (2) the equipment conformed to those specifications; and (3) the equipment supplier warned the United States about possible dangers in the use of the equipment known to the supplier but unknown to the United States. *Boyle v. United Tech. Corp.,* 487 U.S. 500, 512, 108 S.Ct. 2510, 2518, 101 L.Ed.2d 442 (1988). The Supreme Court in *Boyle* found that without this protection, government contractors facing possible liability from the performance of government contracts would either decline to manufacture equipment according to government specifications or raise their price. *Id.* at 507, 108 S.Ct. at 2515–16. Either way, the Court held, the United States' interest in the procurement of equipment would be directly af-

fected, providing a sufficient condition for the displacement of state law. *Id.,* 487 U.S. at 507, 108 S.Ct. at 2515–16. Use of the government contract defense, however, was limited to only those situations where this federal interest significantly conflicted with the operation of state law. *Id.,* 487 U.S. at 507–09, 108 S.Ct. at 2516.

The Estate claims that this defense is applicable only in cases where the plaintiff claims the injuries resulted from the equipment's or product's defective design and not from the supplier's failure to warn about dangers associated with the product's use. While the test enunciated by the *Boyle* Court was specifically tailored for use in design defect cases, the Fifth Circuit has held that it could also be applied in failure to warn cases. *Garner v. Santoro,* 865 F.2d 629, 635 (5th Cir.1989); *Bynum v. FMC Corp.,* 770 F.2d 556, 574 n. 24 (5th Cir.1985). In doing so, however, the court recognized the difficulty a defendant will have under *Boyle* in "establishing an identifiable federal interest or policy in the existence or method of warning and a significant conflict between that federal interest or policy and the operation of state law." *Garner,* 865 F.2d at 635–36; *see also In re Hawaii Fed. Asbestos Cases,* 960 F.2d 806, 813 (9th Cir.1992) ("*Boyle* displaces state law only when the Government, making a discretionary, safety-related military procurement decision contrary to the requirements of state law, incorporates this decision into a military contractor's contractual obligations, thereby limiting the contractor's ability to accommodate safety in a different fashion."); *Dorse v. Eagle–Picher Indus. Inc.,* 898 F.2d 1487, 1489 (11th Cir.1990) (holding that the government contractor defense could only arise in situations where the government prohibits a specific warning which prevents the contractor from complying "with both its contractual obligations and the state-prescribed duty of care"). For purposes of satisfying its burden under § 1442(a)(1), Armco does not have to establish a meritorious federal defense, only a colorable claim. The Court finds that this burden has been met.

■ Having concluded that Armco has raised a colorable defense to the Estate's claims, the Court must next determine whether Armco was acting under the authority of a federal officer and whether a causal connection or nexus exists between Armco's conduct under federal direction and the Plaintiff's state action. Armco claims that at all times relevant to this suit, it acted under the supervision of the Secretary of Commerce and other officials from the Defense Plant Corporation ("DPC"), one of many federal corporations created to assist in the war program. Armco also claims that the nexus requirement under *Mesa* is satisfied with proof that the plant it constructed was built pursuant to DPC plans and the state action against it arose from injuries allegedly caused from Armco's compliance with those plans. Because the Plaintiff's state action is predicated on a failure to warn theory, however, Armco must not only show that the Mill was built pursuant to DPC specifications (and asbestos was a government approved or mandated material) but also that DPC restricted or prohibited Armco from providing adequate precautions against or otherwise notifying its employees of the hazards of asbestos exposure. Due to an absence of evidence on these issues, the Court finds that Armco fails to sustain its burden of proving either that it was acting under the direction of a federal official or that a causal connection exists between the rules imposed by the federal government and the liability asserted by the Estate based on Armco's failure to warn.

Frank Ruffin allegedly contracted an asbestos-related disease that caused his death while working at a steel mill constructed by Armco pursuant to a contract between Armco's Steel Division and DPC during World War II. DPC was created in 1940 by the Reconstruction Finance Corporation ("RFC"), an entity established by Congress to administer certain proprietary and commercial activities of the government. *R.F.C. v. J. G. Menihan Corp.,* 312 U.S. 81, 83, 61 S.Ct. 485, 486, 85 L.Ed. 595 (1941). This government owned corporation was managed and operated by the Secretary of Commerce and by RFC directors and personnel. (Defendant's Memorandum, Instrument No. 6 at Ex. F). Its function was to act as a service agency responsible for war production and

policies. (Defendant's Memorandum, Instrument No. 6 at Ex. F). When either the President, the War Production Board, the War Department, the Navy Department, the Maritime Commission or the Office of Petroleum Coordinator for War would confirm the need for plant facilities, materials, services, or supplies, the RFC, with the approval of the Secretary of Commerce, would commission the DPC to either construct the necessary facilities or otherwise provide what was required. (Defendant's Memorandum, Instrument No. 6 at Ex. F).

According to Armco, DPC exerted significant control over the construction, development, and initially, the operation of the Mill. Specifically, Armco claims that it was instructed by John Synder, Executive Vice President of DPC, that DPC's approval for the Mill's plans, designs, and specifications was mandatory and would prevent construction if not obtained. (Defendant's Memorandum, Instrument No.6 at 7). Authorization was also required for all purchases Armco made in connection with the project. *Id.* Additionally, Armco contends that DPC officials specifically approved the use of asbestos for insulation of piping, roofing and siding because it was the only known material suitable for the various applications necessary in steel production. (Defendant's Memorandum, Instrument No. 6 at 8–9). W.C. Higdon, project engineer for the Mill who served as chief liaison between Armco and DPC, claims that without asbestos insulation, steel could not have been manufactured at the Mill. (Defendant's Memorandum, Instrument No. 6 at Ex. E).

▉▉▉ Armco argues that this evidence demonstrates both that it was acting under the authority of a federal officer and that a causal nexus between the Estate's claims and the actions it took under federal authority exists. "The rule established is that removal by a 'person acting under' a federal officer must be predicated upon a showing that the acts that form the basis for the state civil or criminal suit were performed pursuant to an officer's direct orders or to comprehensive and detailed regulations." *Ryan,* 781 F.Supp. at 947. It is not enough to prove only that "the relevant acts occurred under the general auspices of a federal officer" or that "a corporation participates in a regulated industry." *Id.; see also Fung,* 816 F.Supp. at 572. The official must have direct and detailed control over the defendant. *Fung,* 816 F.Supp. at 572; *Good v. Armstrong World Indus., Inc.,* 914 F.Supp. 1125, 1128 (E.D.Pa.1996). Direct and detailed control is established by showing strong government involvement and the possibility that a defendant could be sued in state court as a result of the federal control. *Pack v. AC and S, Inc.,* 838 F.Supp. 1099, 1103 (D.Md.1993); *Fung,* 816 F.Supp. at 572. "The issue is not simply whether the defendants acted under [federal] officials but whether they are in danger of being sued in state court 'based on action taken pursuant to federal direction.'" *Ryan,* 781 F.Supp. at 950 (quoting *Gulati v. Zuckerman,* 723 F.Supp. 353, 358 (E.D.Pa. 1989)); *see also Brown & Williamson Tobacco Corp.,* 913 F.Supp. at 532–33 (holding that the suit to be removed must be based on activities performed under federal direction); *Bakalis v. Crossland Sav. Bank,* 781 F.Supp. 140, 144–45 (E.D.N.Y.1991) (holding the particular conduct being sued upon must be closely linked to detailed and specific regulations).

▉▉▉ Armco must also prove "a federal nexus between the actions for which [it is] being sued and the directives of federal officers." *Ryan,* 781 F.Supp. at 945. The nexus requirement is established by showing that the state prosecution "has arisen out of the acts done by [the defendant] under color of federal authority and in enforcement of federal law." *Mesa,* 489 U.S. at 131–32, 109 S.Ct. at 966 (quoting *Maryland v. Soper,* 270 U.S. 9, 33, 46 S.Ct. 185, 190–91, 70 L.Ed. 449 (1926)); *Ryan,* 781 F.Supp. at 946 ("Critical under the statute is 'to what extent defendants acted under federal direction' at the time they were engaged in the conduct now being sued upon.") (quoting *Gurda Farms, Inc. v. Monroe County Legal Assistance Corp.,* 358 F.Supp. 841, 844 (S.D.N.Y.1973)). To sustain this burden, the defendant must also "by direct averment exclude the possibility that [the state action] was based on acts or conduct of his not justified by his federal

duty." *Mesa*, 489 U.S. at 132, 109 S.Ct. at 966.

Because the claims asserted by the Estate in this case are predicated on negligence and limited to a failure to warn theory of liability, Armco must show that the government authority it operated under directly interfered with its ability to fulfill its state law obligation to warn its employees of safety hazards. *See Ryan*, 781 F.Supp. at 950 (holding removal improper under § 1442(a)(1) because defendants were sued for producing a product comprised of components developed without government control and although defendants were required under war contract to supply government with product requisite connection between defendants' conduct and state law action was missing); *Brenner v. Kelly*, 201 F.Supp. 871 (D.Minn.1962) ("[U]nless an officer of the United States can justify that which he did by reason of some official connection between the acts complained of and his official duties, the proceeding is not removable."); *cf. Texas v. National Bank of Commerce*, 290 F.2d 229, 234 (5th Cir.), *cert. denied*, 368 U.S. 832, 82 S.Ct. 55, 7 L.Ed.2d 35 (1961) (removal proper where the banking power of private banks serving United States military installations and operating under exclusive and direct control of the government was directly challenged in suit by the state of Texas).

The Court finds that although Armco has proven that DPC supervised and extensively monitored the construction of the Mill, Armco has failed to demonstrate that DPC exercised this same degree of control with respect to safety precautions that allegedly should have been taken to warn employees of the hazards associated with asbestos exposure. There was no evidence to show that DPC prevented Armco from issuing adequate safety warnings or that the government enacted or even considered enacting its own program or guidelines to cover workplace safety. Nor does the evidence show that DPC controlled personnel matters or at all interfered with the duty of care Armco owed under state law to its employees. The mere fact that the government possessed the power to control or regulate employee safety neither establishes that the power was ever

used nor that operational mandates of this type were ever issued. Without such proof, Armco cannot satisfy the statutory requirements for removal under § 1442(a)(1).

Further, the Court finds that the authority Armco cites in support of its position is not applicable to the circumstances of this case. Armco claims that the holdings of *Akin v. Big Three Indus., Inc.*, and *Winters v. Diamond Shamrock Chem. Co.*, may be interpreted to mean that all suits against government contractors working under detailed government plans may be removed under § 1442(a)(1), regardless of the nature of the claims asserted against such contractors as defendants. *See Winters*, 901 F.Supp. at 1199; *Akin*, 851 F.Supp. at 823. In both cases, the court permitted removal based on the extent of the government's involvement with the matter under contention. *See Winters*, 901 F.Supp. at 1199; *Akin*, 851 F.Supp. at 823–24. Neither of these cases, however, was based exclusively on a failure to warn theory of liability and neither court considered whether the role of the government in supplying plans and specifications for construction or manufacture was sufficient to establish government control of indirectly related matters, including safety. This Court finds this distinction to be determinative. *See Good*, 914 F.Supp. 1125, 1130 (holding removal not appropriate when based only upon "general assertions that the government imposed specifications in the contracts" without a showing that the specific injury complained of resulted from government order); *Bahrs v. Hughes Aircraft Co.*, 795 F.Supp. 965, 970 (D.Ariz.1992) (holding defendant sued for injuries sustained by plaintiffs as a result of the dumping of toxic substances into the ground failed to show it was acting under federal authority because there was no evidence to indicate that the government controlled the method of waste disposal). The Court also believes that blanket absolution of liability for all acts of neglect, whether or not committed under specific and direct order, would encourage laxity at the expense of human lives without any corresponding benefit.

Finally, the Court can find no threat to the enforcement of federal laws if the instant

case is adjudicated in state court. "There is little or no outward indication that the civilian actions could be a direct or indirect manifestation of Texas's eagerness to inhibit federal policy." *Ryan*, 781 F.Supp. at 950. Furthermore, the basic intent of § 1442(a)(1) removal is for protection of federal officials, as well as those acting under their direction, against state court hostility or interference with the effectuation of federal policy. In this case, there is arguably no potential federal policy violation, aside from a general government interest in cost control, requiring a federal forum for adjudication. *See id.* at 951 ("Protection of future procurement is a matter readily dealt with by federal statute or government contractual indemnification."). These facts combined with the above distinction require the Court to refuse to exercise jurisdiction over this matter under § 1442(a)(1). The Estate's Motion to Remand will therefore be granted.

### III.

Accordingly, the Court **GRANTS** Plaintiff's Motion to Remand. This case is hereby remanded to the 270th Judicial District Court of Harris County, Texas.

The Clerk shall enter this Order and provide a copy to all parties.