**ORTHOPEDIC SPECIALISTS OF NEW JERSEY PA, Plaintiff,**

v.

**HORIZON BLUE CROSS/BLUE SHIELD OF NEW JERSEY, Defendant.**

**Civ. No. 07–3925.**

United States District Court, D. New Jersey.

Oct. 3, 2007.

**130**

Edward S. Zizmor, Hackensack, NJ, for Plaintiff.

Edward S. Wardell, Kelley, Wardell, Craig, Annin & Baxter, LLP, Haddonfield, NJ, Sheri Hecht Leonard Horizon Blue Cross Blue Shield of New Jersey, Newark, NJ, for Defendant.

## OPINION and ORDER

FAITH S. HOCHBERG, District Judge.

This matter is before the Court on the Court's own motion to consider subject matter jurisdiction. On August 16, 2007 Defendant Horizon Blue Cross/Blue Shield of New Jersey ("Horizon") filed a Notice of Removal from New Jersey Superior Court, Bergen County pursuant to 28 U.S.C. § 1441. On August 21, 2007 the Court ordered both parties to submit additional briefing on jurisdiction. The Court has reviewed the submissions of the parties and has concluded that it lacks subject matter jurisdiction to proceed. Consequently, the Court will remand the parties to New Jersey Superior Court, Bergen County for further proceedings.

### I. Background

The Federal Employees Health Benefits Act ("FEHBA" or "Act"), 5 U.S.C. §§ 8901–8914, was enacted in 1959 in order to provide federal employees with health benefits. FEHBA "charges the Office of Personnel Management ('OPM') with negotiating contracts with private insurance carriers to provide health benefit plans to federal employees...." *Houston Cmty. Hosp. v. Blue Cross and Blue Shield of Tex., Inc.*, 481 F.3d 265, 267 (5th Cir.2007). Pursuant to FEHBA, OPM has the authority to contract for a "Service Benefit Plan," defined in the Act as a "[g]overnment-wide plan, which may be underwritten by participating affiliates licensed in any number of States...." 5 U.S.C. § 8903(1). OPM has contracted for a Service Benefit Plan with the Blue Cross and Blue Shield Association ("Association"), the terms of which are contained in the Service Benefit Plan Master Contract ("Master Contract") between OPM and the Association. (*See* Defendant's Jurisdictional Brief in Response to Court's Order of August 21, 2007 ("Def.Supp.Br.") Ex. A1 (2002 Master Contract), B1 (2006 Master Contract).) The daily administration of the Service Benefit Plan is handled by local Blue Cross and Blue Shield companies. Defendant Horizon Blue Cross and Blue Shield administers the Service Benefit Plan in New Jersey.

Plaintiff Orthopedic Specialists of New Jersey ("Orthopedic Specialists") is a medical services provider. On September 12, 2005 Plaintiff Orthopedic Specialists performed surgery on Emily Diguglielmo. Ms. Diguglielmo was an enrollee of the

Service Benefit Plan as a dependent of her husband, who was then an active federal employee. Plaintiff alleges in its complaint that, prior to performing the surgery on Ms. Diguglielmo, Plaintiff received pre-certification from Defendant, at which time Defendant agreed to reimburse Plaintiff for the procedure. Following the surgery, Plaintiff sought reimbursement for the procedure and was paid $24,279 by Defendant Horizon.

Subsequently, Defendant determined that Ms. Diguglielmo's primary coverage was provided by Medicare. Based on this determination, Defendant declared that its previous payment of $24,279 to Plaintiff on Ms. Diguglielmo's behalf was a mistake. Defendant then sought to recover the allegedly mistaken payment from Plaintiff pursuant to Defendant's understanding of section 2.3(g) of the Master Contract between OPM and the Association.[1] In a letter sent August 15, 2006, Plaintiff demanded a total refund from Defendant in the amount of $24,279. When Plaintiff refused to refund the cost of the procedure, Defendant deducted $24,279 from amounts owing to Plaintiff for other reimbursable procedures.

Plaintiff filed suit in the Superior Court of New Jersey, Bergen County, on July 17, 2007 on a theory of promissory estoppel. (*See* Notice of Removal Ex. 1 (Complaint).) Plaintiff alleges in its complaint that "ORTHOPEDIC would not have performed the surgery but for its reliance on HORIZON'S representations." (*Id.* ¶ 6.) Defendant filed a notice of removal on August 16, 2007. On August 21, 2007 this Court ordered additional briefing on jurisdiction. The Court has considered the parties' additional submissions and concludes that it lacks subject matter jurisdiction to proceed.

## II. Analysis

### A. Standard

■ "[T]he general rule that federal courts have an ever-present obligation to satisfy themselves of their subject matter jurisdiction and to decide the issue sua *sponte* applies equally in removal cases." *See Liberty Mut. Ins. Co. v. Ward Trucking Corp.*, 48 F.3d 742, 750 (3d Cir.1995); *see also* Fed. R. Civ. Pro. 12(h) ("Whenever it appears by suggestion of the parties or otherwise that the court lacks jurisdiction of the subject matter, the court shall dismiss the action."). This Court recognized a serious question about whether the federal officer removal statute, 28 U.S.C. § 1442(a)(1), provided a basis for jurisdiction over Plaintiff's claim. Consequently, the Court ordered additional briefing on this issue, giving the parties ample notice to be heard on this novel and important issue.

■ Generally, when a party moves "[p]ursuant to [Federal] Rule [of Civil Pro-

---

1. Section 2.3(g) concerns erroneous payments in both the 2002 and 2006 Master Contract. The sections are not materially different in the two contracts. Section 2.3(g) reads in relevant part:

 (g) *Overpayments.* If the Carrier or OPM determines that a Member's claim has been paid in error for any reason, the Carrier shall make a diligent effort to recover an overpayment to the member from the member or, if to the provider, from the provider. The Carrier shall follow general business practices and procedures in collecting debts owed under Federal Employees Health Benefits Program. Diligent effort to recover overpayments means that upon discovering that an overpayment exists . . .

 (3) The Carrier may off-set future benefits payable to the member of to a provider on behalf of the member to satisfy a debt due under the FEHBP if the debt remains unpaid and undisputed for 120 days after the first notice.

 Def. Supp. Br. Ex. A1, § 2.3(g) (2002 Master Contract).

cedure] 12(b)(1), the Court must accept as true all material allegations set forth in the complaint, and must construe those facts in favor of the nonmoving party." *Ballentine v. U.S.*, 486 F.3d 806, 810 (3d Cir. 2007) (citing *Warth v. Seldin*, 422 U.S. 490, 501, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975)). The same standard applies when the Court raises subject matter jurisdiction *sua sponte. See, e.g., Slater v. Skyhawk Transp., Inc.*, 187 F.R.D. 185, 202 (D.N.J. 1999).

■ The facts as alleged in Plaintiffs complaint are not in dispute. Therefore the Court will use the same standard applicable to a facial subject matter jurisdiction challenge under Federal Rule of Civil Procedure 12(b)(1). "[A] court evaluating a facial challenge must accept the allegations in the complaint as true, and disposition of the motion becomes purely a legal question." *Sharawneh v. Gonzales*, Civ. No. 07–683, 2007 WL 2684250, *1 (E.D.Pa. Sept.10, 2007) (citing *Gould Elecs., Inc. v.*

*United States*, 220 F.3d 169, 176 (3d Cir. 2000)); *see also 5B* Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1350 (3d ed.2004) (noting that when analyzing the parties' papers, "all uncontroverted factual allegations in the complaint [will be] accepted as true").

## B. Federal Officer Removal Jurisdiction

■ Defendant argues that the Court has jurisdiction over this case pursuant to 28 U.S.C. § 1442(a)(1), the federal officer removal statute.[2] Section 1442(a)(1) provides in relevant part that:

> A civil action … commenced in a State court against any of the following may be removed by them to the district court of the United States for the district and division embracing the place wherein it is pending: (1) The United States or any agency thereof or any officer (or any person acting under that officer) of the United

---

2. Both parties appear to be citizens of New Jersey and the amount in controversy is less than $75,000. As a result Defendant does not claim that this court has diversity jurisdiction pursuant to 28 U.S.C. § 1332. Nor does Defendant suggest that this case presents a federal question over which this Court has jurisdiction pursuant to 28 U.S.C. § 1331.

Finally, Defendant does not suggest that this court may exercise jurisdiction over this case under the doctrine of "complete preemption." Complete preemption is an " 'independent corollary' to the well-pleaded complaint rule" that applies in cases where "the Court has concluded that the pre-emptive force of a statute is so 'extraordinary' that it 'converts an ordinary state common law complaint' into one stating a federal claim for purposes of the well-pleaded complaint rule." *Caterpillar, Inc. v. Williams*, 482 U.S. 386, 393, 107 S.Ct. 2425, 96 L.Ed.2d 318 (1987) (citing *Metropolitan Life Ins. Co. v. Taylor*, 481 U.S. 58, 65, 107 S.Ct. 1542, 95 L.Ed.2d 55 (1987)). Courts have found that FEHBA possesses such extraordinary pre-emptive force for "all complaints that seek relief within the scope of FEHBA's civil enforcement provisions." *Ala.*

*Dental Ass'n v. Blue Cross and Blue Shield of Ala., Inc.*, No. 205–CV–1230, 2007 WL 25488, *5 (M.D.Ala. Jan. 3, 2007) (collecting cases).

FEHBA's preemptive force does have limits, however. "[F]ederal jurisdiction cannot be maintained where the plaintiff's complaint seeks relief under state law and is based on an independent legal duty of the health care plan." *Id.* at *6 (finding complete preemption over contract-based claims, but rejecting complete preemption over state law claims); *see also Transitional Hosps. Corp. of La., Inc. v. La. Health Service & Indemnity Co.*, No. 02–CV–0354, 2002 WL 1768893, *3 (E.D. La. June 12, 2002) (rejecting complete preemption argument because "[t]he instant case … does not involve a dispute over plan terms but rather a detrimental reliance claim based upon erroneous representations made by Blue Cross's staff. The terms of the plan are not in dispute in this case"). Based on this limitation, the Court is satisfied that the doctrine of complete preemption would provide no basis for jurisdiction over Plaintiffs promissory estoppel claim in this Court, even if Defendant had raised the issue.

States or of any agency thereof, sued in an official or individual capacity for any act under color of such office. . . .

28 U.S.C. § 1442(a)(1).

 "The federal officer removal statute is designed to protect officers of the federal government, who[,] when acting pursuant to authority granted them under federal law, run afoul of the laws of a state." *Transitional Hosps. Corp. of La., Inc. v. La. Health Serv.*, No. Civ.A 02–354, 2002 WL 1303121, *4 (D.La. June 12, 2002). In order for the Court to exercise "removal jurisdiction under section 1442(a)(1), a defendant . . . must establish that (1) it is a 'person' within the meaning of the statute; (2) the plaintiff's claims are based upon the defendant's conduct 'acting under' a federal office; (3) it raises a colorable federal defense; and (4) there is a causal nexus between the claims and the conduct performed under color of a federal office." *Feidt v. Owens Corning Fiberglas Corp.*, 153 F.3d 124, 127 (3d Cir.1998) (citing *Mesa v. California*, 489 U.S. 121, 129, 109 S.Ct. 959, 103 L.Ed.2d 99 (1989)). This required showing makes clear that "the mere 'presence of federal regulations does not satisfy the requirements to assert federal jurisdiction pursuant to 28 U.S.C. § 1442(a)(1).' " *Ala. Dental Ass'n*, 2007 WL 25488 at *7 (citing *Kennedy v. Health Options, Inc.*, 329 F.Supp.2d 1314, 1318 (S.D.Fla.2004)).

 Defendant bears the burden of demonstrating the existence of jurisdiction in this Court under section 1442(a)(1). *See N.J. Dept. of Envtl. Protection v. Dixo Co., Inc.*, Civ. No. 06–1041, 2006 WL 2716092, *2 (D.N.J. Sept. 22, 2006) (citing *Feidt*, 153 F.3d at 127). When, as here, a private party is seeking removal under section 1442(a)(1), the party " 'bear[s] a special burden of establishing the official nature of [its] activities.' " *See id.* (quoting *N.J. Dept. of Envtl. Protection v. Exxon Mobil*

*Corp.*, 381 F.Supp.2d 398, 403 n. 5 (D.N.J. 2005)). This "special burden" is warranted because "the policy reasons for generally favoring removal and the existence of federal jurisdiction under section 1442 are not applicable" to private parties. *Id.* (citing *Exxon Mobil*, 381 F.Supp.2d at 403 n. 5).

At the outset it should be noted that there is a split of authority on the question of section 1442(a)(1)'s application to a FEHBA provider like Defendant Horizon. *Compare Transitional Hosps. Corp. of La., Inc. v. La. Health Service & Indem. Co.*, No. Civ.A. 05–2221, 2005 WL 2037553, *3 (E.D.La. Aug.16, 2005) (rejecting federal officer removal jurisdiction over negligent misrepresentation claim); *Haller v. Kaiser Found. Health Plan of the Nw.*, 184 F.Supp.2d 1040, 1045 (D.Or.2001) (rejecting federal officer removal jurisdiction over malpractice and negligence claims); *Cyr v. Kaiser Found. Health Plan of Tex.*, 12 F.Supp.2d 556, 568 (N.D.Tex.1998) (rejecting, without discussion, federal officer removal jurisdiction over negligence, negligent concealment, tortious interference, and Texas commercial bribery statute claims); *Arnold v. Blue Cross & Blue Shield of Tex., Inc.*, 973 F.Supp. 726, 740–41 (S.D.Tex.1997) (rejecting federal officer removal jurisdiction over false advertising and Texas insurance law claim), *with Anesthesiology Assocs.*, No. 03–15664, slip op. (11th Cir.2005) (permitting federal officer removal jurisdiction over assignment of benefits claim); *Ala. Dental Ass'n*, 2007 WL 25488 at *7 (permitting federal officer removal jurisdiction over assignment of benefits claim, but rejecting removal over claim made "solely in connection with [Plaintiff's] contractual arrangements with [Defendant]", but nevertheless permitting supplemental jurisdiction over the latter); *Holton v. Blue Cross & Blue Shield of S.C.*, 56 F.Supp.2d 1347, 1351 (M.D.Ala. 1999) (upholding jurisdiction over health

care provider's claims based on Federal Officer Removal Statute). This split of authority is largely driven by the nature of the plaintiff's claim, and does not occur along a clearly defined line. On the facts presented here, the Court is persuaded by the reasoning of those cases rejecting federal officer removal jurisdiction.

As noted above, *Feidt* identifies four prongs that must be satisfied before a district court may exercise subject matter jurisdiction under section 1442(a)(1). The Court will discuss the first prong—whether Defendant is a "person" for purposes of section 1442(a)(1)—only briefly. The Court will then turn to the second prong to determine whether Defendant acted under color of a federal office. Because the Court's analysis of the second prong is dispositive, the Court does not reach the third and fourth prongs of the *Feidt* test.[3]

### I. Defendant's Status as a "Person"

■ Plaintiffs do not challenge Defendant's status as a "person" for purposes of section 1442(a)(1). "[M]ost courts," it appears, "have held that a corporation ... qualifies as a person" for purposes of the federal officer removal statute. *Exxon Mobil Corp.*, 381 F.Supp.2d at 403 (citing *Crackau v. Lucent Techs.*, No. Civ. 03–1376, 2003 WL 21665135, *2 (D.N.J. June 25, 2003); *Arness v. Boeing N. Am., Inc.*, 997 F.Supp. 1268, 1271–72 (C.D.Cal.1998)); *see also Thompson v. Cmty. Ins. Co.*, No. C–3–98–323, 1999 U.S. Dist. LEXIS 21725 (D.Ohio 1999) ("the overwhelming weight of recent judicial authority supports the view that corporations qualify as 'persons' under the federal officer statute"). As a result, the Court "need not conduct an in-depth analysis of this prong of the test and will instead assume that Defendant is a person for purposes of § 1442(a)(1)." *Exxon Mobil Corp.* 381 F.Supp.2d at 403.

### ii. Whether Defendant "Acted Under" a Federal Office

■ The second prong of the test outlined in *Feidt* focuses on the level of control exercised by the federal agency or officer over the act in question. Under the second prong, a Court must determine whether "the plaintiff's claims are based upon the defendant's conduct 'acting under' a federal office...." *Feidt*, 153 F.3d at 127. In order to make this showing, the private party requesting removal "must demonstrate that it performed *the complained-of activity* at the direction of official federal authority." *Dixo Co., Inc.*, 2006 WL 2716092 at *2 (citing *Willingham v. Morgan*, 395 U.S. 402, 409, 89 S.Ct. 1813, 23 L.Ed.2d 396 (1969); *Exxon Mobil Corp.*, 381 F.Supp.2d at 404; *Arness*, 997 F.Supp. at 1273). Further, the private party seeking removal must "demonstrate that the federal officer had 'direct and detailed control'" over the action in question. *Id.* (citing *Exxon Mobil Corp.*, 381 F.Supp.2d at 404; *Arness*, 997 F.Supp. at 1273; *Reed v. Fina Oil & Chem. Co.*, 995

---

**3.** Courts often consider the second (or "control") prong together with the fourth (or "nexus") prong. *See e.g., N.J. Dept. of Envtl. Protection v. Viacom, Inc.*, Civ. No. 06–1753, 2006 WL 3534364, *3 (D.N.J. Dec. 7, 2006); *Arnold*, 973 F.Supp. at 740. Because the Court ultimately concludes that Defendant has failed to demonstrate the level of "control" required by the second prong, the Court need not reach the "nexus" issue. If, however, the Court were to reach the nexus issue, the Court would be inclined to conclude that Defendant has failed to demonstrate a sufficient nexus between Plaintiff's claim and the act allegedly taken under color of federal office. The Court would likely reach this conclusion for reasons similar to those given in the Court's discussion of *Feidt's* second prong, namely that there is no nexus between the terms of the contract—regardless of whether it can be said that OPM "promulgated" such terms—and Defendant's purportedly erroneous pre-certification.

F.Supp. 705, 710 (E.D.Tex.1998)). Other district courts in this Circuit have summarized the required showing as follows:

> Removal must be predicated upon a showing that the acts forming the basis of the state suit were performed pursuant to an officer's direct orders or comprehensive and detailed regulations. By contrast, if the corporation establishes only that the relevant acts occurred under the general auspices of federal direction then it is not entitled to [section] 1442(a)(1) removal.

*Id.* (quoting *Good v. Armstrong World Indus., Inc.,* 914 F.Supp. 1125, 1128 (E.D.Pa. 1996)).

Defendant contends that it may remove to federal court under section 1442(a)(1) because it acted "pursuant to Plan terms promulgated by OPM, in the context of the FEHBA program for which OPM has responsibility." (Def. Supp. Br. at 1.) Defendant argues that its actions were taken under the "direct and detailed control" of a federal agency or officer because OPM "promulgated" the terms of the Plan, Defendant acted in accord with those terms, and because Plaintiff is asking the Court to determine "what benefit payments

should be made...." (*See* Def. Supp. Br. at 1; Notice of Removal ¶¶ 7, 8(b).) The Court disagrees with Defendant's characterization of both Plaintiffs claim and Defendant's action.[4] For purposes of removal jurisdiction under section 1442(a)(1), Defendant's purportedly erroneous precertification of Ms. Diguglielmo's surgery was not an action taken under the "direct and detailed control" of a federal officer or agent.

In arguing that Defendant acted under the "direct and detailed control" of a federal agency or officer, Defendant relies heavily on the Eleventh Circuit's unpublished decision in *Anesthesiology Associates v. Blue Cross,* 133 Fed.Appx. 738 (11th Cir.2005). (*See* Def. Supp. Br. at 11–13; Notice of Removal ¶ 8(b).) Defendant's reliance on *Anesthesiology Associates* is misplaced.

*Anesthesiology Associates* is binding neither on this Court nor within the Eleventh Circuit. As another district court noted when faced with a similar argument:

> According to the Eleventh Circuit's Internal Operating Procedures, the panel designates a case as 'unpublished' when it believes that the case has no prece-

---

**4.** Even if the Court were to agree that Defendant's claim concerned "what benefit payments should be made," it is not clear that this would alter the Court's analysis. Other courts have noted that a provider's duty to abide by contract terms does not necessarily amount to "control" over the Plan provider. As one court noted, "OPM does not unilaterally determine what benefits are included in the ... service plan. Instead OPM and Blue Cross together *contract* to determine what benefits will be included." *Arnold,* 973 F.Supp. at 740. The court went on to note that, as here, defendant

> has offered no evidence to show that its contact negotiations with OPM involve anything other than arms-length bilateral give-and-take.... OPM negotiates with various insurance carriers to obtain the best benefits coverage packages for federal employ-

ees....OPM contracts with approximately 400 health benefits plans throughout the country, and all federal employees can choose among at least seven plans in which to enroll .... [d]ifferences among plans result from the fact that OPM enters separate negotiations with each carrier.

*Id.* at 741. Relatedly, the 5th Circuit noted that FEHBA providers "freely enter[ ] the market, in which ... carriers 'compete vigorously' with other providers within the pool of federal employees". *Houston Community Hospital,* 481 F.3d at 272. Because the terms of the Master Contract are freely entered into, the mere existence of such terms does not evidence a level of "control" sufficient to provide a basis for removal. The Court need not reach this issue, however, because Plaintiffs claim is so plainly unrelated to the terms of the Master Contract.

dential value. The Eleventh Circuit permits courts in its jurisdiction to cite unpublished decisions as persuasive authority but reliance on them is not favored. Unpublished Eleventh Circuit decisions are not binding precedent. *Transitional Hosps. Corp. of La., Inc.,* 2005 WL 2037553 at *3 (internal citations omitted) (citing 11th Cir. R. 36–3, IOP 6).

More importantly, however, the Court finds the analysis in *Anesthesiology Associates* impersuasive. The Eleventh Circuit stated its holding in broad terms: "A health plan insurer contracting with a government agency under a federal benefits program is a 'person acting under' a federal officer." *Anesthesiology Assocs.,* 133 Fed.Appx. 738. In reaching this conclusion the court primarily relied upon the Fifth Circuit's decision in *Peterson v. Blue Cross/Blue Shield of Texas,* 508 F.2d 55, 56–58 (5th Cir.1975). Unlike both *Anesthesiology Associates* and the case at bar, however, *Peterson* concerned the provision of Medicare benefits, an area in which direct federal control is far more substantial than under FEHBA.[5]

As the Fifth Circuit recently noted, "the governing statutes [for Medicare and the

provision of health care under FEHBA] differ in a significant respect." *Houston Cmty. Hosp.,* 481 F.3d at 272–73. Specifically, "[t]he Center for Medicare and Medicaid Services ('CMS') delegates a portion of its statutory functions to private carriers under 42 C.F.R. § 421.5(b) . . . ." *Id.* The relevant portion of the Code of Federal Regulations states that:

> Intermediaries and carriers act on behalf of CMS in carrying out certain administrative responsibilities that the law imposes. Accordingly, their agreements and contracts contain clauses providing for indemnification with respect to actions taken on behalf of CMS and CMS is the real party of interest in any litigation involving the administration of the program.

42 C.F.R. § 421.5(b). By contrast, however, "[n]o analogous delegation of authority exists" in the FEHBA context. *Houston Cmty. Hosp.,* 481 F.3d at 273. This distinction between FEHBA and Medicare is of central importance in assessing whether the Defendant's action was taken under the "direct and detailed control" of a government agency or officer.[6]

---

**5.** The Eleventh Circuit acknowledged that *Peterson* concerned a Medicare provider, characterizing the case as "finding [section] 1442(a)(1) jurisdiction over a claim by a physician against a health insurer operating under Medicare," *Anesthesiology Associates,* at 4, but did not consider the relevance of the differences in the provision of Medicare and the provision of health care under FEHBA.

**6.** In *Houston Community Hospital,* the Fifth Circuit made this observation about federal control over Medicare in the course of considering Defendant's immunity argument. The court ultimately concluded that "FEHBA carriers [are] not exercising any governmental function because 'it is not apparent that [the carriers] themselves perform any functions that OPM is itself charged with performing.'" 481 F.3d at 270.

Although not dispositive, the Fifth Circuit's immunity analysis is relevant to this Court's present inquiry because of the close relationship between the "government function" analysis for purposes of immunity, and the "direct and detailed control" analysis for purposes of section 1442(a)(1). For example, the Supreme Court has held that one important reason for the federal officer removal statute is to provide a federal forum for immunity claims. *See, e.g., Watson v. Philip Morris Companies, Inc.,* ── U.S. ──, ──, 127 S.Ct. 2301, 2302, 168 L.Ed.2d 42 (2007) (citing *Willingham v. Morgan,* 395 U.S. 402, 407, 89 S.Ct. 1813, 23 L.Ed.2d 396 (1969)). Further, the Court held in *Willingham,* and has reaffirmed more recently, that "[a]t the very least, [section 1442(a)(1)] is broad enough to cover all cases where federal officers can raise a colorable defense arising out of their duty to enforce federal law." 395 U.S. at 406–407,

Finally, *Anesthesiology Associates* can be distinguished on the basis of the claim asserted by Plaintiff. Close analysis of Plaintiff's claim is critical because the Court must determine the specific act upon which Plaintiff's claim is based, and the level of control an agency or officer may have exercised over that act. *See Arnold,* 973 F.Supp. at 740. In *Anesthesiology Associates.* Plaintiff, as an assignee of participants in Blue Cross Blue Shield of Florida, sought reimbursement for completed procedures. *See Anesthesiology Associates,* at 2. As the Eleventh Circuit noted in *Anesthesiology Associates,* the plaintiff's "claims [were] based on the plan participants' rights to reimbursement from [defendant] for medical service expenses...." *Id.* at 6.

■ By contrast, Plaintiff's promissory estoppel claim in the instant case is unrelated to the provision of benefits under the terms of the plan. Rather, Plaintiff's claim arises from Defendant's purportedly erroneous pre-authorization of Ms. Diguglielmo's surgery and Plaintiff's subsequent reliance on this promise. It is *this* act of purportedly erroneous pre-authorization over which a federal agency or officer must have exercised "direct and detailed" control if this Court is to exercise jurisdiction over Defendant under the federal officer removal statute. *Cf. Arnold,* 973 F.Supp. at 740 ("Therefore, [Defendant] must prove that, in deciding not to include coverage for [this procedure] and in disseminating the alleged misrepresentations ... it acted under the 'direct control' of a federal officer."). Defendant does not allege that OPM directed them to erroneously promise to reimburse Plaintiff for Ms. Diguglielmo's procedure.[7] This act was taken by Defendant and Defendant alone.

Defendant attempts to avoid this issue by recasting Plaintiff's claim as one concerning the provision of benefits and the extent of coverage under the Master Contract, to make it appear similar to the claim in *Anesthesiology Associates.* (*See* Def. Supp. Br. at 12.) However, Plaintiff's claim neither concerns the terms of the

---

89 S.Ct. 1813; *see also Osborn v. Haley,* — U.S. ——, ——, 127 S.Ct. 881, 899, 166 L.Ed.2d 819 (2007) (quoting *Willingham,* 395 U.S. at 406–407, 89 S.Ct. 1813). Thus, one important function of section 1442(a)(1) is to provide procedural protection for the substantive law of immunity. Given the symbiotic relationship between section 1442(a)(1) and immunity, it is unsurprising that the respective tests focus on similar factors.

This Court recognizes that the Fifth Circuit's resolution of the "government function" test for immunity does not necessarily resolve the question of "control" under the second prong of *Feidt.* Nevertheless, because both tests require the court to investigate the relationship between the actor, the action, and the government's involvement with both, the Fifth Circuit's discussion of FEBHA-related immunity is relevant to this Court's present inquiry.

7. Nor could Defendant allege that OPM directed them to take this action. It is worth noting in this regard that the terms of the Master Contract appear to prohibit the action taken by Defendant. As Defendant notes, "[t]he contract adds that '[t]he Carrier shall not pay benefits under the contract until it has determined whether it is the primary carrier....'" (*See* Def. Supp. Br. at 4) (citing Master Contract § 2.6(b).) Pursuant to this provision of the Master Contract, Defendant was apparently required to determine whether it was Ms. Diguglielmo's primary carrier *before* paying benefits for her procedure. Here, however, it appears that Defendant *failed* to make the relevant primary carrier determination until nearly a year *after* paying benefits to Plaintiff. It was this error by Defendant upon which Plaintiff's claim of promissory estoppel relies. Thus, it appears that Defendant did not act in accordance with the Master Contract, which undermines Defendant's position that it was acting under the direct control of OPM.

contract nor what benefit payments should be made. Rather, Plaintiff must only prove the "four elements [of] the doctrine of promissory estoppel [under New Jersey law]: 1) a clear and definite promise, 2) made with the expectation that the promisee will rely upon it, 3) reasonable reliance upon the promise, 4) which results in definite and substantial detriment." *Lobiondo v. O'Callaghan*, 357 N.J.Super. 488, 815 A.2d 1013, 1020 (2003) (citing *Malaker Corp. Stockholders Protective Comm. v. First Jersey Nat'l Bank*, 163 N.J.Super. 463, 395 A.2d 222 (1978)).

In short, Defendant "has given the Court nothing upon which to conclude that its employees were acting pursuant to any federal direction when they allegedly misrepresented coverage to [Plaintiff]." *Transitional Hosps. Corp. of La.*, 2002 WL 1303121 at *3. Rather, it is clear that Plaintiffs

> claims arise out of a contract that it alleges was created as a result of representations made by [Defendant's] employees when [Plaintiff] attempted to verify coverage. The claims do not arise out of any of the procedures dictated by the OPM. Accordingly, [Plaintiff] could not have been acting pursuant to federal authority when it allegedly mishandled the coverage inquiry.

*Id.*[8]

## III. Conclusion

Defendant has failed to demonstrate that this Court has subject matter jurisdiction over this claim pursuant to 28 U.S.C. § 1442(a)(1). Because Defendant has not met its burden of demonstrating jurisdiction before this Court,

IT IS on this 2nd day of October, 2007, thereby

**ORDERED** that the instant action is hereby REMANDED to the Superior Court of New Jersey, Bergen County; and it is further

**ORDERED** that the Plaintiffs October 1, 2007 Motion to Dismiss is dismissed without prejudice, because the Court lacks subject matter jurisdiction to consider the motion; and it is further

**ORDERED** that the Clerk of the Court close this case.

---

**8.** Defendant cites several other cases in support of its position, all of which are equally unavailing. *Thompson v. Cmty. Ins. Co.*, No. C–3–98–323, 1999 U.S. Dist. LEXIS 21725 (S.D.Ohio Mar.3, 1999), concerned a Medicare program in which "the federal government delegat[es] its administrative obligations to the Defendant." Similarly, *Group Health, Inc. v. Blue Cross Ass'n*, 587 F.Supp. 887, 890–91 (S.D.N.Y.1984) concerned a Medicare administrator. In *Group Health*, the court noted that "Medicare fiscal intermediaries 'act as agents at the sole direction of the Secretary' of HHS." *Id.* (citing *Peterson*, 508 F.2d at 51). For reasons discussed above, the Court finds Medicare case law inapposite to the FEHBA context.

In *Alabama Dental Association*, the court did not consider the issue of "direct and detailed control." 2007 WL 25488. Similarly, in *Holton v. Blue Cross & Blue Shield of South Carolina*, 56 F.Supp.2d 1347, 1351–52 (M.D.Ala.1999), the court again found federal officer removal jurisdiction but failed to discuss whether Defendant was under the "direct and detailed control" of a federal agency or officer. Because Defendant's petition for removal falters on the "control" prong, these cases offer unpersuasive support for Defendant's position.