James K. ARNESS, et. al., Plaintiffs,

v.

BOEING NORTH AMERICAN, INC., a Delaware Corporation, et. al., Defendants.

No. CV 97–8623 ABC MCx.

United States District Court, C.D. California.

Jan. 26, 1998.

Walter J. Lack, Gary Allan Praglin, Engstrom, Lipscomb & Lack, Los Angeles, CA, Thomas V. Girardi, Girardi & Keese, Los Angeles, CA, for plaintiffs.

Brad D. Brian, Stephen M. Kristovich, M. Elizabeth Deane, Munger, Tolles & Olson, Los Angeles, CA, Jeffrey S. Davidson, Steven E. Bledsoe, Kirkland & Ellis, Los Angeles, CA, for defendants.

ORDER RE: PLAINTIFFS'
MOTION TO REMAND

COLLINS, District Judge.

Plaintiffs' motion to remand came on regularly for hearing before this Court on January 26, 1998. After reviewing the materials submitted by the parties, argument of counsel, and the case file, it is hereby ORDERED that Plaintiffs' motion to remand is GRANTED. Plaintiffs' request for costs and attorney's fees is DENIED.

### I. Background

**A. Procedural Background**

On October 21, 1997, Plaintiffs James K. Arness, et. al. ("Plaintiffs") filed a complaint ("Complaint") in the Los Angeles Su-

perior Court alleging state law causes of action against Boeing North American, Inc., et al. ("Defendants"). On November 24, 1997, Boeing North American, Inc., North American Rockwell Corporation, Rockwell Manufacturing Company, Rockwell Standard Corporation, Rocketdyne, Inc., and North American Aviation, Inc. (collectively, "BNA") filed a notice of removal to remove Plaintiffs' action to this Court based on (1) 28 U.S.C. § 1442(a)(1) (federal officer removal); (2) 42 U.S.C. § 2210(n)(2) (United States District Court has original jurisdiction over public liability actions arising out of a nuclear incident); and (3) 28 U.S.C. § 1441(a) based on the Court's original jurisdiction over actions arising from activities on a federal enclave. On December 18, 1997, the Court issued an Order to Show Cause why the matter should not be remanded for lack of subject matter jurisdiction.

Plaintiffs filed the instant motion to remand ("Motion") on December 22, 1997. On December 31, 1997, the Court signed a stipulation by the parties to continue the dates for the parties' briefs on the Court's Order to Show Cause to coincide with the briefing schedule for Plaintiffs' Motion. On January 12, 1998, BNA filed an opposition to Plaintiffs' motion on behalf of the Defendants ("Opposition"). BNA now seeks removal based solely on the Federal Officer Removal Statute, 28 U.S.C. § 1442(a)(1) ("federal officer removal"). Plaintiffs filed reply papers on January 20, 1998 ("Reply").

## B. Factual Background Relevant to the Instant Motion

This action stems from the alleged release and disposal of trichloroethylene ("TCE") and other toxic chemicals by BNA and the other Defendants from their activities at the "Rocketdyne Facilities," [1] which allegedly resulted in the contamination of the surrounding area's groundwater, soil, and subsurface soil. Compl. at ¶ 1. Plaintiffs allege that their exposure to these chemicals has caused them both personal injury and damage to their real and personal property. Id. at ¶ 2.

BNA manufactured and tested rocket engines at portions of the Rocketdyne Facilities pursuant to contracts with the United States government. Bradley Decl. ¶ 2. Plaintiffs allege that in the process of "testing, developing and researching rocket engines," the Defendants negligently allowed TCE and other toxic substances to enter the soil and groundwater. Compl. at ¶ 31. Specifically, Plaintiffs allege that the contamination occurred through Defendants' (1) storage of solvents, including TCE; (2) use of TCE and other solvents to flush rocket engine hardware; (3) disposal of toxic solvents "through recycling, inadvertent dumping and intentional dumping;" (4) use of unlined and lined "surface impoundment and onsite creeks ... to dispose of solvents;" (5) dumping of "solvents through the connections of solvent drains into old septic systems, causing leakage from surface impoundments and piping and leakage from solvent storage barrels; and (6) "[i]ntentionally dumping volatile organic compounds and industrial solvents." Id.

BNA asserts that it performed its rocket engine contracts at "the direction of federal officers pursuant to detailed and comprehensive procedures dictated by these officers." Barrett Decl. ¶ 5. Specifically, one of BNA's test engineers, Ernest Barrett, declares that "[t]he Department of Defense and NASA imposed the use of TCE as a contractual requirement in the manufacturing and test operations" of rocket engines. Id. ¶ 7; Halchak Decl. ¶ 7. The TCE was used to "flush" the rocket engines to "eliminate the potential for fire or explosion upon subsequent hot fire test or missile launch." Barrett Decl. ¶ 7. Finally, Barrett declares that "designees and agents of the Administrator of NASA, the Secretary of the Air Force and the Secretary of Defense were present to oversee ... and ... had the authority to stop" the TCE flushing operations. Barrett Decl. ¶ 10.

## II. Discussion

### A. Standard

#### 1. Removal Generally

■ Removal jurisdiction is governed entirely by statute. See 28 U.S.C. § 1441, et.

---

1. The "Rocketdyne Facilities" include the Santa Susana Field Laboratory; the Atomics International Facilities; and the Hughes Aircraft Facility. Compl. at ¶ 1. Since 1948, the Defendants have performed rocket engine manufacturing and testing for the United States government at the Rocketdyne Facilities. Id. at ¶ 29; Opp. at 1:8–15.

*seq.* Courts in the Ninth Circuit apply a " 'strong presumption' against removal jurisdiction," with the result that "the defendant always has the burden of establishing that removal is proper." *Gaus v. Miles, Inc.*, 980 F.2d 564, 566 (9th Cir.1992) (citing *Nishimoto v. Federman–Bachrach & Assocs.*, 903 F.2d 709, 712 n. 3 (9th Cir.1990); *Emrich v. Touche Ross & Co.*, 846 F.2d 1190, 1195 (9th Cir.1988)). "Federal jurisdiction must be rejected if there is any doubt as to the right of removal in the first instance." *Id.* (citing *Libhart v. Santa Monica Dairy Co.*, 592 F.2d 1062, 1064 (9th Cir.1979)).

## 2. Federal Officer Removal Statute

Section 1442(a)(1) of Title 28 of the United States Code provides that "[a]ny officer of the United States ... or person acting under him, for any act under color of such office" may remove a pending state action to a district court of the United States. The defendant seeking federal officer removal must satisfy a two-part test. First, the defendant must raise a colorable federal defense to plaintiffs' claims. *Mesa v. California*, 489 U.S. 121, 139, 109 S.Ct. 959, 970, 103 L.Ed.2d 99 (1989). Second, the defendant must establish that it acted under the direction of a federal officer by demonstrating "a causal nexus between plaintiffs' claims and acts it performed under color of federal office." *Fung v. Abex Corp.*, 816 F.Supp. 569, 571–72 (N.D.Cal.1992); *see also Maryland v. Soper (No. 1)*, 270 U.S. 9, 33, 46 S.Ct. 185, 190, 70 L.Ed. 449 (1926); *Ryan v. Dow Chemical Co.*, 781 F.Supp. 934, 939 (E.D.N.Y.1992). Before applying this test, however, "a defendant must qualify as a 'person' for the purposes of 28 U.S.C. § 1441(a)(1)." *Overly v. Raybestos–Manhattan*, 1996 WL 532150 (N.D.Cal.) at *2 (citing *Fung*, 816 F.Supp. at 572). A defendant who successfully establishes these requirements "gain[s] access to federal court [even] where no federal question is presented by the plaintiff." *Ryan*, 781 F.Supp. at 939; *see also Blackman v. Asbestos Defendants*, 1997 WL 703773 (N.D.Cal.) at *2.

## B. Analysis of Federal Officer Removal

### 1. Corporation as "Person" in Context of 28 U.S.C. § 1442(a)(1)

While the Supreme Court has held that government agencies are not included within the term "person" for purposes of Section 1442(a)(1),[2] the Court did not decide whether a corporation acting under a federal officer qualifies as a "person" for purposes of federal officer removal. *International Primate Protection League v. Administrators of Tulane Educational Fund*, 500 U.S. 72, 83–87, 111 S.Ct. 1700, 1707–09, 114 L.Ed.2d 134 (1991); *see also Fung*, 816 F.Supp. at 572; *Ryan*, 781 F.Supp. at 946. There appears to be a split of authority, even within the Ninth Circuit, as to whether Congress intended to give corporations removal power under Section 1442(a)(1). *Compare Blackman*, 1997 WL 703773 at *2 (finding that word "person" includes corporations); *Ruffin v. Armco Steel Corp.*, 959 F.Supp. 770, 773 (S.D.Tex. 1997) (reading "person" expansively to include corporations "delegated responsibility to carry out directives of the federal government"); *Overly*, 1996 WL 532150 at *2 (finding defendant corporation a person); *Good v. Armstrong World Indus.*, 914 F.Supp. 1125, 1127–28 (E.D.Pa.1996) (including corporations within definition of "person"); *Fung* 816 F.Supp. at 572 (same); *Ryan*, 781 F.Supp. at 946–47 (explaining that corporations "could be engaged in activities that amount to the implementation of a federal policy under the direction of a government officer," and thus can be persons under § 1442(a)(1)); *with Arnold v. Blue Cross & Blue Shield of Texas*, 973 F.Supp. 726, 739 (S.D.Tex.1997) (disagreeing with holdings that corporations qualify as persons for purposes of § 1442(a)(1)); *Krangel v. Crown*, 791 F.Supp. 1436, 1446 (S.D.Cal.1992) (holding that defendant corporation is not a "person" under § 1442(a)(1) based on "purpose of the statute, the fact that ambiguities should be resolved against federal jurisdiction, and the strong interest of the states in adjudicat-

---

**2.** In 1996, however, Congress legislatively overruled *International Primate Protection League v. Administrators of Tulane Educ. Fund*, 500 U.S. 72, 111 S.Ct. 1700, 114 L.Ed.2d 134 (1991) by

explicitly permitting an agency to effectuate removal. 28 U.S.C.A. § 1442(a)(1) (West Supp. 1997).

ing the rights and obligations of their citizens").

Plaintiffs urge the Court to "follow the analysis and holding of its sister California District Court, the District Court for the Southern District of California ... and find that corporations do not fall within the protections of the Federal Officer Removal Statute." Mot. at 12:5–8. BNA contends, however, that "the overwhelming weight of authority confirm that private corporations are within the ambit of the statute." Opp. at 15:21–22. Thus, BNA argues that the Court should reject the holding of *Krangel*, and adopt the analysis of the Northern District of California in *Fung*, finding that Section 1442(a)(1) applies to corporations. *Id.* at 17:1–6.

Although the authority presented to the Court is conflicting, the trend in the case law appears to be that of finding defendant corporations "persons" for purposes of the federal officer removal statute. The Ninth Circuit has not provided direction as to whether it considers private corporations to have removal power under Section 1442(a)(1). However, the more recent decisions from courts within the Ninth Circuit (*Fung, Overly*, and *Blackman*) have found "person" to include defendant corporations. Based on the Court's reading of the authority supporting corporations as "persons" and the reasoning behind them, the Court finds that BNA is a "person" under Section 1442(a)(1).

### 2. Colorable Claim of Federal Defense

■ "[F]ederal officer removal must be predicated on the allegation of a colorable federal defense." *Mesa*, 489 U.S. at 129, 109 S.Ct. at 965. However, the question presented to the court is "not whether [the defendant's] claimed defense is meritorious, but only whether a colorable claim to such a defense has been made." *Fung*, 816 F.Supp. at 573. Thus, BNA need not establish the *merits* of a federal defense to comply with *Mesa's* requirement that BNA predicate its removal on a "colorable federal defense."

■ BNA alleges several federal defenses, including, *inter alia*, the government contractor defense. According to *Boyle v. Unit-*

*ed Technologies Corp.*, 487 U.S. 500, 108 S.Ct. 2510, 101 L.Ed.2d 442 (1988), liability for design defects in military equipment cannot be imposed on governmental contractors when

(1) the United States approved reasonably precise specifications;

(2) the equipment conformed to those specifications; and

(3) the supplier warned the United States about the dangers in the use of the equipment that were known to the supplier but not to the United States.

*Boyle*, 487 U.S. at 512, 108 S.Ct. at 2518. Although *Boyle* involved a design defect, the test may apply equally to government contracts performed according to government specifications, because the "defense is intended to implement and protect the discretionary function exception under the Federal Tort Claims Act, 28 U.S.C. § 2680(a)." *Snell v. Bell Helicopter Textron, Inc.*, 107 F.3d 744, 746, 749 & n. 3 (9th Cir.1997) (explaining, in addition, that the military contractor defense "might also be supported by evidence that the contractor, in selecting a particular component or employing a particular process was following specific directions of a government officer reflecting the latter's exercise of judgment"); *cf. Bahrs v. Hughes Aircraft Co.*, 795 F.Supp. 965, 969 (finding assertion of official immunity by governmental contractor for dumping of toxic waste "a colorable federal defense" for purposes of § 1442(a)(1)).

The Court finds that BNA has alleged a "colorable federal defense" under *Boyle*, because the government's requirement that BNA use TCE could invoke the government's need to exercise its discretion regarding the military equipment tested by BNA for the government. *Snell*, 107 F.3d at 746. To support its assertion of the military contractor defense, BNA attaches several documents in which the government mandates that BNA use TCE to clean rocket engine hardware. *See* Halchak Decl. and attached Exhibits. Furthermore, BNA alleges that it complied with these specifications. *See* Barrett Decl. ¶¶ 7–10. Finally, at the time BNA used TCE, it had no greater knowledge than the government that TCE might be harmful.

*Id.* at ¶ 5; *see also Blackman,* 1997 WL 703773 at *3 (holding that defendant contractor had no duty to warn government of danger of asbestos use in military equipment when defendant "had no greater opportunity to know of the dangers of asbestos").

■ In addition, BNA asserts that it has a colorable federal defense pursuant to Section 707 of the Defense Production Act ("DPA"), 50 U.S.C. § 2061 *et. seq.* Opp. at 24:13–25:20. The DPA provides that "[n]o person shall be held liable for damages or penalties for any act or failure to act resulting directly or indirectly from compliance with a rule, regulation, or order issued pursuant to this Act …." 50 U.S.C. § 2157. In support of its DPA defense, BNA provides the declaration of John W. Bradley who declares that "[a]t least some, if not all, of the contracts for … the government rocket engine programs [were] 'rated' contracts (also known as an 'order') entered into pursuant to … 50 U.S.C. § 2061–2171." Bradley Decl. at ¶ 2. Thus, BNA contends that it has a colorable defense under the DPA to the extent that Plaintiffs' claims relate to BNA's DPA-related activities. Opp. at 17–20.

Plaintiffs argue, however, that the DPA defense only applies to contract damages, not to the tort claims that Plaintiffs assert, barring BNA's reliance on such a defense. Mot. at 15–18. Nevertheless, "[f]or purposes of satisfying section 1442(a)(1) … the defendant[ ] need not establish a meritorious federal defense, only a colorable claim." *Ryan,* 781 F.Supp. at 945 (questioning the application of the military contractor defense for manufacturer of Agent Orange, but finding "colorable claim" under the DPA despite tort action). Therefore, whether BNA can *successfully* assert a military contractor or DPA defense is not the question before the Court today. Based on the foregoing, the Court finds that BNA has alleged a colorable federal defense for purposes of Section 1442(a)(1).[3] However, the fact that BNA can demonstrate a colorable claim to a federal defense, does not necessarily entitle BNA to removal under Section 1442(a)(1). BNA must also satisfy

the causal element of the federal officer removal statute.

### 3. Acting Under Direction of a Federal Officer

■ The crux of Plaintiffs' motion to remand lies in the "acting under" language of the federal officer statute. To establish that it was "acting under" a federal officer, Boeing must show a causal nexus between the conduct charged in Plaintiffs' claims and the acts performed by BNA at the direction of official federal authority. *Willingham v. Morgan,* 395 U.S. 402, 409, 89 S.Ct. 1813, 1817, 23 L.Ed.2d 396 (1969). Most courts have held that the federal officer must have " 'direct and detailed control' over the defendant." *Fung,* 816 F.Supp. at 572; *see also Ryan,* 781 F.Supp. at 947. "This control requirement can be satisfied by strong government intervention and the threat that a defendant will be sued in state court 'based upon actions taken pursuant to federal direction.' " *Fung,* 816 F.Supp. at 572. (quoting *Gulati v. Zuckerman,* 723 F.Supp. 353 (E.D.Pa.1989)). However, "if the corporation establishes only that the relevant acts occurred under the general auspices of federal direction then it is not entitled to § 1442(a)(1) removal." *Good,* 914 F.Supp. at 1128 (citing *Fung,* 816 F.Supp. at 569; *Ryan,* 781 F.Supp. at 947).

BNA argues that it has "submitted evidence establishing that BNA was acting at the direction of 'an officer' of the United States." Opp. at 10:3–4. Specifically, BNA presents declarations of its employees, as well as government contract specifications ("specs"), to show that the government required BNA to flush rocket engine hardware with TCE "to satisfy the government's production requirements." *See* Mot. at 10:3–21; Barrett Decl. ¶ 5; Halchak Decl. ¶ 3; Ex. 2 at 5, 7; Ex. 3 at 10–12. Plaintiffs, however, contend that such specifications do not meet the "acting under" requirement of Section 1442(a)(1), because their lawsuit is premised on BNA's *disposal* of TCE, not its *use* of TCE. Reply at 10:15–19. Plaintiffs assert

---

**3.** In addition, because the Court finds that BNA has alleged a colorable federal defense pursuant to the military contractor defense and the DPA,

the Court need not address the other defenses raised by BNA.

that the government specifications relied on by BNA do not establish that a federal officer directed or controlled BNA's disposal of TCE. *Id.* at 10:19–20; Mot. at 9:19–25. Thus, Plaintiffs argue that BNA has failed to prove a causal nexus between Plaintiffs' allegations of BNA's dumping of toxic substances into the ground and groundwater and BNA's actions that were directed by a federal officer. Reply at 10:21–24.

Whether a causal nexus exists between the conduct charged in Plaintiffs' claims and the acts performed by BNA at the direction of federal officers is intensely disputed by the parties. On the one hand, BNA has presented specific evidence establishing that the federal government contractually required BNA to use TCE in its testing operations, and that federal officers, with on-site offices, observed BNA's operations to ensure that they complied with these government specifications. Barrett Decl. ¶¶ 6–10; Halchak Decl. ¶¶ 3–5; Exs. 2–3. On the other hand, none of the specifications proffered by BNA require BNA to dispose of TCE in a particular manner, which disposal is at the center of Plaintiffs' Complaint. Compl. at ¶ 31 (alleging that BNA's storage and dumping of TCE resulted in contamination which caused Plaintiffs' injuries).

BNA argues that to establish the required causal nexus "it is enough that the government directed BNA to use TCE as part of the government-mandated manufacturing and testing processes which took place at the facilities, and that it was during these processes that the release of TCE to the ground and air occurred." Opp. at 11:12–15. However, the Court finds the cases that BNA relies on to support this proposition distinguishable.

For instance, BNA cites to *Fung v. Abex Corp.*, which BNA contends did not require the defendant "to establish that the government directed it to expose plaintiffs to potentially carcinogenic materials, but merely to show that the defendant was complying with the extensive government direction it received in its manufacture of the product." *Id.* at 12:4–7. In *Fung,* the defendant sought to remove plaintiffs' action alleging exposure to asbestos on submarines built by the defendant under the direct control of the Secretary of the Navy. The court found the requisite causal nexus because the plaintiffs' injuries occurred while the plaintiffs worked on vessels that were constructed with asbestos at the government's direction and approval. *Fung,* 816 F.Supp. at 572–73. Thus, the *Fung* Plaintiffs' exposure to asbestos occurred because they were in direct contact with the product which was constructed with asbestos according to government specifications. Plaintiffs in the instant case, however, were not subjected to TCE from their exposure to the rocket engines designed and tested by BNA with TCE at the government's direction. Rather, Plaintiffs allege that they were exposed to TCE as a result of BNA's alleged negligent disposal and storage of the TCE, which disposal was not performed under the direct and detailed control of a government officer. Thus, Plaintiffs are not suing BNA "based upon actions taken pursuant to federal direction." *Id.* 816 F.Supp. at 573 (internal quotations omitted).

BNA also relies on *Akin v. Big Three Indus.,* 851 F.Supp. 819 (E.D.Tex.1994), where plaintiffs were exposed to toxic chemicals as a result of their work performed on jet engines manufactured by defendant for the United States Air Force. The court found that the defendant met the nexus requirement for Section 1442(a)(1) removal because exposure to the chemicals occurred during plaintiffs' repair of engines, which involved grinding engine parts manufactured by the defendant in compliance with government specifications. Again, Plaintiffs' situation is distinguishable because they are not suing BNA based on its use of TCE according to government specifications.

If *Plaintiffs* had performed the flushing and testing operations according to the government's specifications, and as a result had been exposed to TCE, then the Court agrees that the causal nexus would be met under *Akin,* where the court held that "when a government contractor builds a product pursuant to Air Force specifications and is later sued because compliance with those specifications allegedly causes personal injuries, the nexus requirement is satisfied." *Akin,* 851 F.Supp. at 823–24. However, BNA's use of

TCE did not cause Plaintiffs' injuries. Rather, Plaintiffs' injuries were allegedly caused by BNA's negligent disposal and storage of TCE, which activities were not performed at the government's behest. In fact, Barrett of BNA declares that "[t]he government did not specify safeguards to prevent the release of TCE to the air and ground in these flushing procedures." Barrett Decl. ¶ 10. Furthermore, BNA does not submit any evidence that the government required BNA to store the TCE in a particular manner which resulted in the alleged release of TCE that caused Plaintiffs' injuries.

BNA, however, contends that the lack of mandate from the government to implement safeguards to prevent the release of TCE cuts in favor of finding that Plaintiffs' allegations are related to BNA's actions performed under a federal officer's direction. BNA asserts that TCE was released into the soil and air during the required flushing operations and that "[g]overnment officers who oversaw the TCE flushing operations would have known this and would have understood that the contractual mandate to use TCE was resulting in some TCE being released to the ground and air." Barrett Decl. ¶ 10.[4]

However, the Court finds this argument similar to those presented by the defendants in *Overly v. Raybestos–Manhattan*, 1996 WL 532150 (N.D.Cal.) and *Ruffin v. Armco Steel Corp.*, 959 F.Supp. 770 (S.D.Texas 1997). In both cases, the defendant government contractors were sued by plaintiffs for their alleged exposure to asbestos based on failure to warn theories. The court in *Overly* found that because the control exercised by the United States over the defendant, in the guise of detailed specifications regarding the manufacture and design of ships built by the defendant, did not restrict the defendant's

"ability to notify individuals of the presence of asbestos in the work environment," the defendant failed to establish a causal connection between that control and "the legal theory under which plaintiffs" sought to hold the defendant liable. *Overly*, 1996 WL 532150 at * 4. Likewise in *Ruffin*, the court held that to establish the required causal nexus, the defendant must not only show that the mill where plaintiffs were exposed to asbestos was built pursuant to government specifications, "but also that [the government] restricted or prohibited [the defendant] from providing adequate precautions against or otherwise notifying its employees of the hazards of asbestos exposure." *Ruffin*, 959 F.Supp. at 774.[5]

As stated in *Ryan*, the "critical" question under the federal officer removal statute is "to what extent defendants acted under federal direction at the time they engaged in the conduct now being sued upon." *Ryan*, 781 F.Supp. at 946 (internal quotations omitted). BNA admits that the government did not specify that BNA take safeguards to prevent the release of TCE. Plaintiffs are suing BNA based on its conduct resulting in the alleged release of TCE, including BNA's storage and disposal of TCE. Thus, because the government did not specify safeguards that BNA must use, or restrict BNA's ability to implement safeguards, BNA was not acting under federal direction when it allegedly released the TCE. Rather, the acts relevant to Plaintiffs' suit occurred only " 'under the general auspices of' a federal officer." *Fung*, 816 F.Supp. at 572 (quoting *Ryan*, 781 F.Supp. at 947).

In addition, BNA argues that "it had no knowledge of any hazards associated with TCE" and that it was "not until 1986 that

4. The Court notes the speculative nature of this argument. BNA provides no support for this broad statement about what unknown government officers "would have known and understood."

5. Furthermore, in *Ruffin*, the defendant argued that evidence that the government required and "specifically approved the use of asbestos ... because it was the only known material suitable for the various application necessary in steel production" demonstrated the causal nexus between the plaintiff's claims and the actions the

defendant took under federal authority. *Ruffin*, 959 F.Supp. at 775. However, the Court found that because the Plaintiff sued under a failure to warn theory, the defendant "must show that the government authority it operated under directly interfered with its ability to fulfill its state law obligation to warn its employees of safety hazards," which it did not. *Id.* at 776. Likewise, BNA has not demonstrated that the government exercised any control over BNA's ability to take safeguards to prevent the release of TCE.

[the] EPA established a limit for TCE in groundwater." Opp. at 4:24–5:8. However, BNA's knowledge of the dangers of TCE, while relevant to a government contractor defense, is not relevant to BNA's ability to remove Plaintiffs' action pursuant to Section 1442(a)(1) In *Ruffin*, the defendant "claimed that it was without knowledge that [the plaintiff] was exposed to asbestos." *Ruffin*, 959 F.Supp. at 772. It is just as unlikely that the government or defendant knew of the hazards associated with asbestos when the government required the defendant to use asbestos. However, as explained above, the court remanded the action because the defendant did not establish that the federal officer exercised the same degree of control "with respect to safety precautions that allegedly should have been taken to warn employees of the hazards associated with asbestos exposure," as it did in the design specifications of the mill. *Id.* at 775. Whether BNA should be excused from taking safeguards to prevent the release of TCE because it lacked knowledge of its dangers relates to the *merits* of Plaintiffs' action. It does not, however, establish a causal nexus between the government's mandate that BNA use TCE during rocket testing performed for NASA and the Air Force, and BNA's conduct relating to the alleged release of TCE upon which Plaintiffs are now suing.

Based on the foregoing, and considering the "strong presumption" against removal jurisdiction, the Court finds that Defendants have failed to meet their burden of proving the underlying facts necessary to support removal under 28 U.S.C. § 1442(a)(1). Because this Court does not otherwise have subject matter jurisdiction over Plaintiffs' claims, the Court REMANDS Plaintiffs' action to the Los Angeles County Superior Court.

Finally, the Court exercises its discretion not to award Plaintiffs' costs under 28 U.S.C. § 1447(c). Given the support cited by BNA, its arguments relating to federal officer removal were "certainly colorable." *Beisel v. Aid Ass'n for Lutherans*, 843 F.Supp. 616, 619 (C.D.Cal.1994). Thus, the Court DENIES Plaintiffs' request for costs and attorney's fees.

## III. Conclusion

For all of the reasons set forth above, the Court hereby ORDERS that Plaintiffs' Motion to Remand is GRANTED based on this Court's lack of subject matter jurisdiction. Plaintiffs' request for removal costs is DENIED. The Court REMANDS Plaintiff's action to the Los Angeles County Superior Court.

**SO ORDERED.**