**Larraine McGEE, as Surviving Mother of Chris Everett and on Behalf of the Estate of Chris Everett, and Patrick Everett, as Surviving Father of Chris Everett, Plaintiffs,**

v.

**ARKEL INTERNATIONAL, LLC, KBR Technical Services, Inc. and Kellogg, Brown & Root Services, Inc., Defendants.**

Civil Action No. 4:08–cv–02709.

United States District Court,
S.D. Texas,
Houston Division.

April 20, 2009.

573

Jeffrey L. Raizner, Michael P. Doyle, Patrick Mason Dennis, Doyle Raizner LLP, Houston, TX, for Plaintiffs.

## MEMORANDUM

KEITH P. ELLISON, District Judge.

The Court has received Plaintiffs' Motion to Remand (Doc. No. 16) and Motion to Dismiss (Doc. No. 10). After considering the Motion and all responses and replies thereto, and the applicable law, as indicated in the Court's recent order, the Court finds that the Motion to Remand should be denied and the Motion to Dismiss should be granted.

## I. INTRODUCTION

This case involves Sgt. Chris Everett's fatal electrocution while serving in the U.S. Army in Iraq in September 2005. Sgt. Everett was cleaning a Humvee using a power washer connected to a generator that Plaintiffs claim was improperly grounded. (Pl. Am. Pet. ¶ 4.2). Plaintiffs, Larraine McGee, on behalf of the estate of Chris Everett, and Patrick Everett, Sgt. Everett's parents, claim that Defendants Arkel International, LLC ("Arkel"), Kellogg, Brown, and Root Services, Inc. and KBR Technical Services, Inc. (collectively "KBR")[1] and their agents or servants are responsible for Sgt. Everett's death because they failed to repair certain electrical deficiencies in the generator. (*Id.*)

Plaintiffs bring claims for personal injuries, negligence, and wrongful death under the Iraqi Civil Code Articles 5, 202–203, and 207. Plaintiffs pray for compensatory and exemplary damages, as well as attorney's fees, costs, and interest. In August 2008, Plaintiffs filed this case in state court in Harris County. KBR timely removed and moved to dismiss, claiming that Plaintiffs' claims are time barred by the Texas statutes of limitations. Plaintiffs have filed a Motion to Dismiss Without Prejudice to pursue a very similar suit in Louisiana that is currently stayed pending disposition of this case. Plaintiffs subsequently filed this Motion to Remand. Because the Court may not act without jurisdiction, it will first decide Plaintiffs' Motion to Remand before addressing Plaintiffs' Motion to Dismiss.[2]

## II. MOTION TO REMAND

In a case that has been removed, it is the defendant's burden to establish the existence of federal jurisdiction. *See Winters v. Diamond Shamrock Chemical Co.,* 149 F.3d 387, 397 (5th Cir.1998). Normally, the Court looks to the plaintiffs complaint to establish jurisdiction. *Aquafaith Shipping, Ltd. v. Jarillas,* 963 F.2d 806, 808 (5th Cir.1992). However, under 28 U.S.C. § 1442(a)(1), the defendant may re-

1. In order to support its military mission in Iraq, the U.S. Army awarded KBR a contract under the authority of its Logistics Civil Augmentation Program ("LOGCAP") to provide logistical support services to the military forces in Iraq. *See, e.g. Lane v. Halliburton,* 529 F.3d 548, 554 (5th Cir.2008).

2. A federal court's "first inquiry" must be whether it has subject matter jurisdiction. *Smallwood v. Ill. Cent. R.R. Co.,* 385 F.3d 568, 576 (5th Cir.2004) (en banc) (rejecting the argument that allowing a remand of a meritless case undermines judicial economy, because subject matter must be addressed prior to a motion to dismiss). Although the Fifth Circuit has recognized that, in some instances, a court has leeway to choose among threshold grounds for dismissing a case, the Court of Appeals established its jurisdiction before proceeding to determinations that invoke the merits of the case. *See Harden v. Field Memorial Community Hosp.,* 265 Fed. Appx. 405, 408 (5th Cir.2008) (not designated for publication) (citing with approval a Federal Circuit case holding that the district court erred when it granted a 41(a)(2) motion prior to confirming its subject matter jurisdiction); *Environmental Conservation Organization v. City of Dallas,* 529 F.3d 519, 525 (5th Cir. 2008) (citing *Sinochem Int'l Co. v. Malaysia Int'l Shipping Co.,* 549 U.S. 422, 127 S.Ct. 1184, 167 L.Ed.2d 15 (2007)).

move based on the existence of a colorable federal defense. *Id.*

## A. Federal Officer Removal Jurisdiction

KBR argues that federal officer removal jurisdiction is proper under 28 U.S.C. § 1442(a)(1) because KBR was acting under the direct and detailed control of federal officers—the Secretaries of the Armed Services and their delegees, including military contracting officers. Plaintiffs deny that the actions giving rise *to* this lawsuit have a causal nexus with KBR's government-directed activities.

■ The federal officer removal provision allows removal for actions by the:

United States or any agency therefore or any officer (or any person acting under that officer) of the United States or of any agency therefore, [is] sued in an official or individual capacity for any under the color of such office or on account of any right, title or authority claimed under any Act of Congress for the apprehension or punishment of criminals or the collection of the revenue.

28 U.S.C. § 1442(a)(1). In order to establish federal officer removal jurisdiction, the defendants must establish (1) that they are "persons" within the meaning of the statute; (2) that the defendants acted pursuant to a federal officer's directions and "that a causal nexus exists between the defendant's actions under color of federal office and the plaintiff's claims"; and (3) that a "colorable federal defense" exists. *Jefferson County, Ala. v. Acker,* 527 U.S. 423, 431, 119 S.Ct. 2069, 144 L.Ed.2d 408 (1999); *Mesa v. California,* 489 U.S. 121, 139, 109 S.Ct. 959, 103 L.Ed.2d 99 (1989) (upholding the requirement of a federal defense); *Willingham v. Morgan,* 395 U.S. 402, 407–07, 89 S.Ct. 1813, 23 L.Ed.2d 396 (1969); *Winters v. Diamond Shamrock Chemical Co.,* 149 F.3d at 398–400. The

right of a federal officer to raise a defense arising out of his federal duties "is not to be frustrated by a grudgingly narrow interpretation of the removal statute." *See Arizona v. Manypenny,* 451 U.S. 232, 241–42, 101 S.Ct. 1657, 68 L.Ed.2d 58 (1981); *Winters v. Diamond Shamrock Chemical Co.,* 149 F.3d at 398 (quoting *Willingham,* 395 U.S. at 407, 89 S.Ct. 1813).

### 1. Status as Persons

Corporations are persons under 28 U.S.C. § 1442(a)(1). *See, e.g., Winters v. Diamond Shamrock,* 149 F.3d at 398. Neither party disputes that KBR meets this criterion.

### 2. Officer's Directions and Causal Nexus

■ To establish that a person was "acting under" a federal officer, the defendant must show a causal nexus between the conduct charged in the plaintiffs' claims and the acts performed by the defendant at the direction of federal authority. *Willingham v. Morgan,* 395 U.S. at 409, 89 S.Ct. 1813; *Arness v. Boeing North American, Inc.,* 997 F.Supp. 1268, 1274 (C.D.Cal.1998). The federal officer must have "direct and detailed control over the defendant" such that "the acts that form the basis for the suit were performed pursuant to an officer's direct orders or to comprehensive and detailed regulations." *Ryan v. Dow Chemical Co.,* 781 F.Supp. 934, 947 (E.D.N.Y.1992); *Arness,* 997 F.Supp. at 1273 (quoting *Fung v. Abex. Corp.,* 816 F.Supp. 569, 572 (N.D.Cal.1992)). However, if the corporation "establishes only that the relevant acts occurred under the general auspices of federal direction then it is not entitled to § 1442(a)(1) removal." *Arness v. Boeing North American, Inc.,* 997 F.Supp. at 1273 (citing *Good v. Armstrong World Industries, Inc.,* 914 F.Supp. 1125, 1128 (E.D.Pa.1996); *Fung,* at 816 F.Supp. at

569; *Ryan v. Dow Chemical Co.,* 781 F.Supp. at 947).

In *Winters,* the Fifth Circuit found that the government had exercised sufficient control over the production of Agent Orange to satisfy the "acting under" requirement. 149 F.3d at 398–400. The Department of Defense had specified the precise mixture and the exact labeling of the drums containing Agent Orange. *Id.* at 399. *See also In re "Agent Orange" Product Liability Litig.,* 304 F.Supp.2d 442, 450 (E.D.N.Y.2004). In *McMahon v. Presidential Airways, Inc.,* the court held that the defendants met the "acting under" prong of the officer removal test because the contract between the Government and the defendant specified crew qualifications and equipment, and the airplane routes at issue were determined during meetings with Department of Defense personnel. 410 F.Sup.2d 1189, 1197, 1199 (M.D.Fla. 2006). *See also Blackman v. Asbestos Defendants (BHC),* 1997 WL 703773 (N.D.Cal.1997) (holding that, because U.S. Air Force officials controlled the design and development of the asbestos-containing rocket motors, the defendants were acting under the control of the USAF). By contrast, the *Arness* court held that there was no causal nexus between the allegedly illegal disposal and storage of a chemical and the acts performed under federal direction when the government directed the defendant to use a certain chemical, but did not require the defendant to dispose of the chemical in a particular manner. *Arness,* 997 F.Supp. at 1274. *See also Guillory v. Ree's Contract Service, Inc.,* 872 F.Supp. 344, 347 (S.D.Miss. 1994) (holding that the defendant was not "acting under" the control of an officer because the contracts governing the defendant's conduct "expressly allowed the performance of acts that are not directed by ... any government officer" and did not direct the scope of activities at issue in the case).

Here, Plaintiffs contend that "neither the U.S. nor the military provided direct and detailed control of the specific electrical safety procedures or of Defendants' specific maintenance and installation of the generator and power washer at issue." (Doc. No. 16, Pl. Mot., at 8.) Even if the military provided procedures and ordered the installation and maintenance, Plaintiffs argue that Defendants did not follow these procedures or else the Court would have to conclude that the U.S. government and the military directed KBR to create electrical hazards by installing the generator. (Doc. No. 16, Pl. Mot., at 9.) They cite findings from a Democratic Policy Committee[3] hearing that they claim suggests that the Department of Defense had no oversight of the contractor's electrical work.[4]

---

**3.** The Democratic Policy Committee (DPC) was established in January 1947, after President Truman signed legislation to create majority and minority party policy committees in the Senate. The Democratic Policy Committee website, http://dpc.senate.gov/dpcabout.cfm (last visited April 15, 2009).

**4.** The report cites the following exchange with a KBR employee. DPC Oversight Hearings on Waste, Fraud, and Corruption in Iraq, Sept. 26, 2008, http://dpc.senate.gov/dpcdoc.cfm?doc_name=sr–110–2–155 (last visited, April 13, 2009).

*Testimony of Debbie Crawford, former KBR electrician, 7/11/2008:*
"QUESTION: So the Department of Defense had no oversight program to review the work. They had no process by which to see if the work was being done accurately and even after we had incidents of electrocution, they then implemented no process of oversight or investigation.
CRAWFORD: I'm not aware of any program or any organization. The DCMA [Defense Contract Management Agency], but they're evidently understaffed ...
QUESTION: And so you would say DOD failed to have any oversight?

KBR responds that the actions at issue were taken under the direct and detailed control of federal officers because KBR's maintenance and power generation services at Camp Taqaddum were performed pursuant to KBR's contract with the U.S. Army, and Task Orders 59 and 89. Specifically, KBR employees, Mark Ingle, a contracts administrator at Al Taqaddum, and Timothy Yarborough, an operations coordinator at Al Taqaddum, testified via declaration that KBR provided services to the Army in Iraq under a contract with the U.S. Army ("LOGCAP"). (SEALED Doc. No. 33, Ex. 4, ¶ 4; Ex. 5 ¶¶ 2–3.) Ingle and Yarborough aver that, in February 2005, KBR was specifically directed to perform generator operation and maintenance on 16 generators, not including the generator involved in Sgt. Everett's death in September 2005. (Ex. 4 at ¶ 11; Ex. 5 at ¶ 8; Ex. 4–C.) KBR attaches a letter from an administrative contracting officer in the Defense Contract Management Agency, who authorized the work on the 16 generators. (SEALED Doc. No. 33, Ex. 2–B.) KBR could not expand the scope of its work without receiving new directions from the Army. (Ex. 4 at ¶ 11; Ex. 5 at ¶ 8.) Pursuant to that contract, all work was performed under the direct and detailed control of the military contracting officer specified in the LOGCAP contract. (Ex. 4 at ¶ 6; Ex. 5 at ¶ 4.) The LOGCAP contract governed KBR's provision of power generation and maintenance. (Ex. 4 at ¶ 9.)

Based on the contracts and Ingle and Yarborough's declarations, the Court finds that the military controlled the maintenance and repair of the electric generators. KBR was specifically tasked with repairing certain generators and not others. The military provided work orders to perform specific duties with respect to the generators. As a district court in New Jersey explained, when the plaintiffs attempted to hold the defendant liable for the government-controlled manufacture of military radar products and the emissions from radar transmissions tubes, the court does not need to ascertain that the government "specifically instructed [the defendant] to create a highly dangerous radar device or that it instruct[ed] [the defendant] to withhold information and warnings regarding safety from the government and foreseeable users." *Crackau v. Lucent Technologies,* No. Civ. 03–1376(DRD), 2003 WL 21665135 (D.N.J. June 25, 2003) (holding that it is enough that government guidelines and specifications controlled the defendant's activities). In addition, this case is similar to *Hoey v. AECOM Government Services, Inc.* in which this Court held that claims for failure to maintain a safe work environment were properly removable because the U.S. Army exercised direct and substantial control over safety in the location at issue. (C.A.L–03–6, Doc. No. 25, Mar. 18, 2004.)

Likewise, KBR has established that a causal nexus exists between KBR's challenged actions and the acts directed by the federal officer. Plaintiffs allege that KBR is liable because it was involved in the failure to repair certain electrical deficiencies in the improperly grounded generator and power washer. KBR was specifically not tasked with maintaining the generator at issue pursuant to the contract, signed by a federal officer, authorizing their activities.

### 3. Colorable Federal Defense.

 To satisfy the third prong, the defendants must demonstrate that they

CRAWFORD: I think the U.S. government failed all across the board.
QUESTION: In not having oversight on this.

CRAWFORD: Yes. State Department, OBO [Overseas Buildings Operations], DOD, everyone."

have a colorable federal defense. They need not prove the asserted defense, but need only articulate its "colorable" applicability to the plaintiff's claims. *Willingham v. Morgan*, 395 U.S. at 406, 89 S.Ct. 1813; *Mesa*, 489 U.S. at 128, 109 S.Ct. 959; *Winters*, 149 F.3d at 400. In light of the policy behind § 1442(a), the statute must be interpreted liberally to allow a defendant acting under the control of a federal officer to assert his or her federal defenses in federal court. *Winters*, 149 F.3d at 400. KBR asserts that several colorable defenses are at issue here: the political question doctrine, the Federal Tort Claims Act combatant activities defense, the state secrets doctrine, Defense Production Act immunity, and defenses arising out of insurance indemnity provisions.

### Political Question Doctrine

■ KBR first asserts that it raises a colorable defense under the political question doctrine. The political question doctrine arises from the separation of powers among the three branches of government, and "excludes from judicial review those controversies which revolve around policy choices and value determinations constitutionally committed for resolution to the halls of Congress or the confines of the Executive Branch." *Japan Whaling Ass'n v. American Cetacean Soc.*, 478 U.S. 221, 230, 106 S.Ct. 2860, 92 L.Ed.2d 166 (1986).

■ In *Baker v. Carr*, the Supreme Court set forth six elements indicative of a non-justiciable, political question:

■ a textually demonstrable constitutional commitment of the issue to a coordinate political department; or

■ a lack of judicially discoverable and manageable standards for resolving it; or

■ the impossibility of deciding without an initial policy determination of a kind clearly for nonjudicial discretion; or

■ the impossibility of a court's undertaking independent resolution without expressing lack of the respect due coordinate branches of government; or

■ an unusual need for unquestioning adherence to a political decision already made; or

■ the potentiality of embarrassment from multifarious pronouncements by various departments on one question. 369 U.S. 186, 217, 82 S.Ct. 691, 7 L.Ed.2d 663 (1962). These six tests are "probably listed in descending order of both importance and certainty." *Vieth v. Jubelirer*, 541 U.S. 267, 278, 124 S.Ct. 1769, 158 L.Ed.2d 546 (2004). "Unless one of these formulations is inextricable from the case at bar, there should be no dismissal for non-justiciability on the ground of a political question's presence." *Baker*, 369 U.S. at 217, 82 S.Ct. 691. In applying the *Baker* analysis, the court must make an inquiry into the facts of the particular case and may find it useful to focus on the elements of the plaintiffs' claims. *Lane v. Halliburton*, 529 F.3d at 558, 564.

With respect to the first *Baker* factor, KBR argues that Plaintiffs' claims necessarily involve issues committed to the executive branch, including military decision-making. KBR contends that, because Sgt. Everett was injured at Camp Taqaddum, adjudicating Plaintiffs' claims will require an inquiry into the applicable military regulations and directives regarding operation and maintenance services. KBR also argues that Plaintiffs' claims will implicate the second *Baker* factor, because they are not susceptible to resolution by judicially discoverable standards. According to KBR, this case will necessarily require an analysis of the military's needs and priorities that the Court is not equipped to discern. The Fifth Circuit recently held,

however, that in tort suits, the textual commitment factor weighs in favor of judicial resolution and the traditional tort standards provide a judicially manageable standard. *Lane v. Halliburton,* 529 F.3d at 560–63.

KBR also argues that the third and fourth *Baker* factors apply to this case, which it contends will require the Court to undertake an initial policy decision concerning the military's decision to contract for and fund only limited operation and maintenance power generation work. It argues that an investigation into the requirements and restrictions the military placed on a civilian contractor to provide those services would express a lack of respect due to the coordinate branches of government that oversee such war efforts. In addition, KBR is concerned that the Court would need to question the military's judgment not to authorize KBR to perform any repairs on the generator at issue despite previous problems with elec-

tric shocking from the power washer. (SEALED Doc. No. 33, Ex. 3.) Consequently, it contends that allegations surrounding the causation element of Plaintiffs' negligence and wrongful death claims [5] raise a colorable political question doctrine defense.[6]

The Fifth Circuit reversed and remanded three district court decisions that dismissed, on political question grounds, cases based on KBR's failure to warn of unsafe conditions in Iraq. 529 F.3d at 568–69. In remanding to allow the district courts to reconsider their dismissals, however, the Fifth Circuit noted that, with respect to the plaintiffs' negligence claims, the plaintiffs' allegations surrounding the element of causation move "precariously close to implicating the political question doctrine." 529 F.3d at 567. It did not rule out the possibility that, upon further inquiry, the district courts could properly dismiss for political question doctrine rea-

---

**5.** Article 202 of the Iraqi Civil Code provides, "Every act which is injurious to persons such as murder, wounding, assault, or any other kind of [infliction of injury] entails payment of damages by the perpetrator." Quoted in Dan E. Stigall, *Iraqi Civil Law: Its Sources, Substance, and Sundering,* 16 J. Transnat. L & Pol'y 1, 42 (2006). Article 203 of the Iraqi Civil Law provides, "[i]n case of murder and in case of death resulting from wounds or any other injurious acts renders the perpetrator liable to pay compensation to the dependant of the victim who have been deprived sustenance on account of the murder or death." *Baragona v. Kuwait Gulf Link Transport Co.,* 1:05–cvc–1267–WSD, 691 F.Supp.2d 1346, 1349 (N.D.Ga.2007) (quoting Iraqi Civil Code Art. 203).

**6.** The Court notes that it is possible Texas or Louisiana law could apply in this case, although the application of state law would not affect the colorable federal defense analysis since the tort of wrongful death (or negligence) in those states also involves the element of causation. A recent California district court approved the parties' agreement

that California, rather than Iraqi, law must apply because the Coalition forces in Iraq declared that Iraqi civil law would not apply to contractors working in Iraq. *Dalkilic v. Titan Corp.,* 516 F.Supp.2d 1177, 1192 (S.D.Cal.2007), (referring to CPA Order Number 17 (Revised), CPA/ORD/27 June 2004/17 (June 27, 2004), *available at* http://www.iraqcoalition.org/regulations/20040627_CPAORD_17_Status_of_Coalition_Rev_with_Annex_A.pdf.) In Order 17, the CPA declared that [c]ontractors shall not be subject to Iraqi laws or regulations in matters relating to the terms and conditions of their Contracts including licensing and registering employees, businesses and corporations; provided, however, that Contractors shall comply with such applicable licensing and registration laws and regulations if engaging in business or transactions in Iraq other than Contracts." CPA Order 17 § 4(2). The recent Status of Force Agreement ("SOFA"), signed by the Iraqi foreign minister and the U.S. Ambassador to Iraq on November 17, 2008, adjusts this immunity, although the retroactive effects of the SOFA and laws to be passed pursuant to it remain unclear.

sons. 529 F.3d at 567. Likewise, while the Court is mindful that the political question doctrine may not ultimately apply to this case,[7] it holds that KBR has presented a colorable defense because an investigation into the military's policies and activities related to this case could be barred by the political question doctrine. The Court need not opine on whether the other defenses raised are colorable because one is sufficient to support federal jurisdiction. Likewise, KBR's two other grounds for federal jurisdiction, federal question jurisdiction and jurisdiction based on the U.S.'s control and authority over Camp Taqaddum, need not be addressed as federal officer removal jurisdiction is sufficient to support removal of the entire case. For these reasons, Plaintiffs' Motion to Remand has been denied.

### III. PLAINTIFFS' MOTION TO DISMISS WITHOUT PREJUDICE

■ Plaintiffs filed a Fed.R.Civ.P. 41(a)(2) Motion to Dismiss prior to its Motion to Remand. Because KBR had answered, the Plaintiff must seek leave of Court to dismiss the action. FED.R.CIV.P. 41(a)(2). KBR contends that the Court cannot grant Plaintiffs' Motion because it will be stripped of a potential defense.

■ Whether to grant an FED. R.CIV.P. 41(a)(2) motion is committed to the district court's discretion. *Hyde v. Hoffmann–La Roche, Inc.,* 511 F.3d 506, 509 (5th Cir.2007). Dismissal without prejudice is upheld unless the defendant will suffer clear legal prejudice other than the prospect of a second lawsuit. *Id.* at 509 (quoting *Ikospentakis v. Thalassic Steamship Agency,* 915 F.2d 176, 177 (5th Cir.1990)); *Phillips v. Illinois Cent. Gulf*

*R.R.,* 874 F.2d 984, 985 (5th Cir.1989). "A plaintiff's voluntary dismissal may substantially prejudice the defendant if it effectively strips him of a defense that would otherwise be available. That the plaintiff may obtain some tactical advantage over the defendant in future litigation is not ordinarily a bar to dismissal." *Ikospentakis v. Thalassic Steamship Agency,* 915 F.2d at 177–78 (citing *LeCompte v. Mr. Chip, Inc.,* 528 F.2d 601, 604 (5th Cir. 1976))

In *Elbaor v. Tripath Imaging, Inc.,* the plaintiff sought voluntary dismissal to refile in a jurisdiction where the statute of limitations would not be a bar, and the district court dismissed with prejudice. 279 F.3d 314, 318 (5th Cir.2002). The Fifth Circuit held that the district court had properly determined that unconditional dismissal would have caused the defendant plain legal prejudice because it was potentially stripped of a limitations defense (the plaintiff did not indicate where the case would be refiled). 279 F.3d at 319. It, however, vacated the dismissal and remanded to allow the district court to dismiss with conditions to minimize the prejudice rather than to dismiss outright with prejudice. 279 F.3d at 320.

Likewise, in *Phillips v. Illinois Cent. Gulf R.R.,* the plaintiff contended that the district court erred in granting summary judgment in favor of the defendants on their statute of limitations defense instead of granting his pending Rule 41(a)(2) motion to dismiss. 874 F.2d 984, 985–86 (5th Cir.1989). The Fifth Circuit disagreed and explained that the plaintiff sought the dismissal to re-file in a jurisdiction where the statute of limitations would not be a bar. *See id.* In light of this fact, it con-

---

**7.** A recent decision held that, in a case involving KBR and another soldier who died because of electrocution, the political question doctrine did not apply to the plaintiff's claims under Pennsylvania law given the known facts at that time. *Harris v. Kellogg, Brown & Root Services, Inc.,* 618 F.Supp.2d 400, 432–33 (W.D.Pa.2009).

cluded that the district court correctly denied the motion, reasoning that the absolute loss of a statute of limitations defense constitutes the type of clear legal prejudice that precludes the granting of an unconditional dismissal. *See id.* at 987. *See also Ikospentakis v. Thalassic S.S. Agency,* 915 F.2d 176, 177 –180 (5th Cir.1990) (upholding the district court's denial of the plaintiffs 41(a)(2) motion to dismiss because, if they had to litigate in Louisiana rather than Texas, the defendants would be stripped of a *forum non conveniens* defense unavailable under Louisiana law).

Plaintiffs respond that these cases hold that an absolute or complete stripping of a potential defense requires denial of a motion to dismiss. They contend, if this case is dismissed and the Louisiana case pursued, KBR will not be "stripped" of a potential defense because Louisiana, like Texas, has a potentially applicable statute of limitations.

The Fifth Circuit recently confronted a similar situation in *Hyde v. Hoffmann–LaRoche,* 511 F.3d 506 (5th Cir.2007). The plaintiff filed a products liability action in Texas, moved to dismiss under 41(a)(2), and filed a virtually identical case in New Jersey. 511 F.3d at 508. The district court granted the motion to dismiss without prejudice over the defendants' argument that they were prejudiced because the New Jersey court would apply New Jersey law, without a statute of repose that would limit the manufacturer's liability, rather than Texas's 15–year statute of repose. 511 F.3d at 508. The Fifth Circuit agreed with the defendants and held that if the defendants had to defend themselves in New Jersey, it was unlikely that New Jersey courts would apply the Texas statute of repose and, therefore, the defendants were potentially stripped of a defense such that they had established legal prejudice. 511 F.3d at 513.

In Texas, the applicable statute of limitations for injury resulting in death is two years. Tex. Civ. Prac. & Rem.Code § 16.003(b); Tex. Civ. Prac. & Rem.Code Ann. § 71.031(a)(2) ("An action for damages for the death or personal injury of a citizen of this state, of the United States, or of a foreign country may be enforced in the courts of this state, although the wrongful act, neglect, or default causing the death or injury takes place in a foreign state or country, if … (2) the action is begun in this state within the time provided by the laws of this state for beginning the action"). KBR contends that because Plaintiffs argue that their suit is not barred under Louisiana, Civil Code 3549, granting Plaintiffs' Motion to Dismiss would potentially strip KBR of its statute of limitations defense. The Louisiana provision provides: "If the action is barred under the law of this state, the action shall be dismissed unless it would not be barred in the state whose law would be applicable to the merits[,] and maintenance of the action in this state is warranted by compelling considerations of remedial justice." La. Civ.Code Ann. art. 3549. Thus, in order to maintain their action, Plaintiffs would have to demonstrate that "compelling considerations of remedial justice" exist.

Unlike the defendants in *Hyde, Elbaor* or *Phillips,* KBR is not stripped of a statute of limitations defense. The statute of limitations for wrongful death actions in Louisiana is one year. La. Civ.Code Ann. art. 2315.1. While Plaintiffs will likely try to argue that the Louisiana statute of limitations does not apply because of "compelling considerations," under Article 3549, this counter argument will not prevent KBR from raising the statute of limitations argument such that it is plainly prejudiced.[8] The dicta in *Manshack v. South-*

---

**8.** In addition, this case is in its early stages

and the course of litigation presents no preju-

*western Elec. Power Co.*, in which the Fifth Circuit "endors[ed] the denial of voluntary dismissal if approval would allow a plaintiff to select a different body of law unfavorable to the defendant's position" gives the Court pause. 915 F.2d 172, 175 (5th Cir.1990) (upholding a district court's dismissal without prejudice where the prospective second forum, a Texas state court, would be required to apply the same choice of law rules as in the district court); *accord* 9 WRIGHT & MILLER, FEDERAL PRACTICE AND PROCEDURE: CIVIL 2D § 2364 (1995) ("Dismissal in order to reinstate the action in a forum that will apply a different body of substantive law clearly is disfavored") (citing, inter alia, *Manshack* ), *cf. Radiant Technology Corp. v. Electrovert USA Corp.*, 122 F.R.D. 201, 205–06 (N.D.Tex.1988) (granting a motion to dismiss so that the parties who had filed suit in Texas could continue their patent dispute in California).

The law of this Circuit, incorporating the dicta in *Manshack*, appears to be that plain prejudice is apparent when the defendant is stripped of a potential defense or when the second forum will apply different law unfavorable to the defendant's position. Plaintiffs' claims, however, arise under Iraqi law, and any Court that adjudicates them will apply Iraqi law. Thus, this case is similar to *Manshack*. This and the Louisiana Court will apply Iraqi law, and, in both courts, Plaintiffs claims are immediately confronted with an expired statute of limitations. For these reasons, the Court granted Plaintiffs' Motion to Dismiss without prejudice. The Court will entertain an agreed motion for costs and fees to compensate KBR for the time spent on its and Plaintiffs' Motions to Dismiss.

## IV. CONCLUSION

As indicated in the Court's previous Order Plaintiffs' Motion to Remand (Doc. No. 16) has been denied and Plaintiffs' Motion to Dismiss Without Prejudice (Doc. No. 10) has been granted. Plaintiffs' claims are hereby **DISMISSED WITHOUT PREJUDICE.**

**IT IS SO ORDERED.**

dice that warrants the denial of Plaintiffs' Motion: the Court held one hearing on a Motion for a Protective Order, the Court has not set a trial date, the parties have not held their initial conference, this order includes the first determination adverse to plaintiffs' position, and discovery has not yet begun. *Hartford Acc. & Indemn. Co. v. Costa Lines Cargo Services, Inc.*, 903 F.2d 352, 360 (5th Cir.1990) ("Important in assessing prejudice is the stage in which the motion to dismiss is made").